DISTRICT–REALTY TITLE INSURANCE CORPORATION, Appellant,

v.

Edward FORMAN and Sallie Forman, Appellees.

No. 85–1006.

District of Columbia Court of Appeals.

Argued Oct. 28, 1986.
Decided Dec. 15, 1986.

---

Michael A. Schuchat, with whom Diane P. Burka, Washington, D.C., was on the brief, for appellant.

Kate A. Martin, with whom David N. Webster, Washington, D.C., was on the brief, for appellee Sallie Forman.

Edward Forman, Washington, D.C., pro se adopts and joins in the brief filed by appellee Sallie Forman.

Before PRYOR, Chief Judge, and NEBEKER and BELSON, Associate Judges.

PRYOR, Chief Judge:

This appeal involves two consolidated lawsuits brought by appellant District-Realty Title Insurance Corporation (District Title), a creditor of appellee Edward Forman. The suits requested that Mr. Forman's conveyance of the Forman family home and assignment of certain real estate commissions to his wife, Sallie Forman, should be set aside as fraudulent. District Title argued that both transactions were designed to hinder its collection of its debt from Mr. Forman. After a non-jury trial, the court found that District Title offered no evidence that it was a creditor whom the Formans intended to defraud, and that the transactions did not, in fact, defraud District Title because it extended credit to Mr. Forman several years after the transactions in question, with full knowledge of those transactions. The trial court then entered judgment for appellees Edward and Sallie Forman.

Appellant now contends that the trial court made errors of fact and law in arriving at its conclusions. It first asserts that the court erred in its factual determination that the conveyance of the Forman family residence merely effectuated the Formans' prenuptial intent to share Edward Forman's home. It also contends that the court further erred by failing to employ a presumption that any such transfers made without consideration and while Mr. Forman was insolvent were fraudulent. Finding the asserted errors of law unpersuasive, and perceiving no clearly erroneous factual finding on the part of the trial court, we affirm.

I

*Factual Background*

Appellee Edward Forman, formerly an attorney in Alexandria, Virginia, conducted an extensive real estate settlement practice. From 1960 through 1981, Forman used escrow funds deposited for settlement purposes for his own use and that of his business, Alexandria Title Corporation (ATC). Shortages occurred, which were covered to some extent by payments received in subsequent settlements. In the years 1966 through 1978, however, ATC never had enough cash to meet its liability for escrow deposits held for settlement. District Title acted as Forman's settlement insurer and satisfied claims made by the escrow depositors. On February 2 and 6, 1981, Forman signed two promissory notes totalling $189,556.41 to the order of District Title as reimbursement for the payments made by District Title to the depositors. When Forman defaulted on his payments, District Title obtained summary judgment on June 2, 1982 for the amounts of the notes plus interest and costs.

Edward Forman was previously married to Delores Forman. She obtained an Alabama decree of divorce in 1960. On June 8, 1965, while unmarried, Edward Forman bought a home at 3131 N Street, N.W. and a deed was recorded solely in his name. On January 1, 1966, Edward Forman and Sallie Forman were married. On May 5, 1967, the N Street home was conveyed

(through a straw party) from Edward Forman to Edward and Sallie Forman as tenants by the entirety. The deed was dated February 7, 1967. On March 10, 1967, Delores Forman filed suit in the Circuit Court of Fairfax, Virginia, to vacate the Alabama divorce on the grounds that the Alabama court lacked jurisdiction; but this suit was dismissed on May 5, 1970. On November 17, 1972, the N Street home was conveyed from Edward and Sallie Forman to Sallie Forman as sole owner by deed dated October 8, 1969. Subsequently, Delores Forman died in 1974.

On December 20, 1976, Edward Forman assigned his right to receive commissions for real estate transactions from Columbia Real Estate Title Insurance Corporation (Columbia Title) to Sallie Forman. Sallie Forman received approximately $113,543.00 from the assignment.

Since 1977, Samuel Gillman has been the President of District Title. In 1980, Gillman, a long-time friend and business associate of Mr. Forman, asked him to do business with District Title because of Mr. Forman's large client base. Previously, from 1968 through 1977, Mr. Gillman was President of Columbia Title. In 1976, Mr. Gillman personally accepted the assignment of commissions from Mr. Forman to Sallie Forman on behalf of Columbia Title. In 1967, he also helped to prepare and record the deed transferring ownership of the N Street home to the Formans as tenants by the entirety while he was President of American Real Title Corporation (American Title).

## II

### Findings of the Trial Court

The court found as fact that the 1967 conveyance of the N Street home was not made with fraudulent intent but was merely the effectuation of a tacit understanding between Edward and Sallie Forman to share Mr. Forman's house once they were married. The court supported this conclusion by noting that Edward Forman owned other real estate solely in his name at the time of his marriage to Sallie Forman but did not convey it to himself and her as tenants by the entirety as he might have done if his motivation was to place his property beyond the reach of Delores Forman or his creditors.

The court, however, found the conveyance dated October 8, 1969 and recorded November 17, 1972, which transferred ownership of the N Street home from Mr. and Mrs. Forman to Sallie Forman as sole owner, to have been made with the intent to hinder Delores Forman should she prevail in her suit to vacate the divorce. The trial court concluded that this transfer was made to protect the asset from claims of Delores Forman which would arise if her divorce was set aside and Edward Forman's marriage to Sallie Forman voided, thereby dissolving the tenancy by the entirety.

The court also found that the December 20, 1976 assignment of Columbia Title commissions to Sallie Forman was made with the primary intent to hinder the depositors of escrow funds in the event they discovered that Edward Forman was using their settlement funds for his personal use. The court found that since Mr. Gillman personally participated in both the conveyance of the N Street home and the assignment of commissions while acting as head of American Title and Columbia Title, District Title had imputed knowledge that these assets were unavailable to them as security when it extended credit to Mr. Forman in 1981. The court, therefore, found that District Title was neither misled nor induced to rely on Edward Forman's ownership of the N Street home or the Columbia Title commissions when he executed the promissory notes. The court lastly found that District Title otherwise offered no evidence that Mr. Forman intended to hinder or defraud it by the conveyances or assignment.

## III

Since this case was tried without a jury, the trial court's judgment both as to facts

and law may not be set aside except for errors of law, unless it appears that judgment is plainly wrong or without evidence to support it. D.C.Code § 17–305(a) (1981); *see, e.g., Cahn v. Antioch University,* 482 A.2d 120, 128 (D.C.1984). This means that a trial court's findings of fact will not be set aside unless they are clearly erroneous. *See, e.g., Auxier v. Kraisel,* 466 A.2d 416, 417 (D.C.1983).

The trial court first concluded that the 1967 conveyance of the N Street home to Sallie Forman was not fraudulent but was merely the execution of a prenuptial understanding between Edward and Sallie Forman that they would share the property after their marriage. Testimony at trial indicated that Sallie Forman moved her own furniture to the N Street home pursuant to the couple's agreement that Sallie would contribute to the furnishing, maintenance, and renovation of the home. This evidence, as well as the existence of other real estate holdings that Mr. Forman owned but did not similarly transfer, support the trial court's factual finding that the conveyance of the N Street home was not made with fraudulent intent but was merely the delayed fulfillment of the prenuptial understanding to share the property as the marital abode.

· Appellant also contests the trial court's finding that it did not suffer fraud in fact as a result of the transactions. The trial court found that District Title was neither misled nor induced to rely on Edward Forman's ownership of the N Street home or the commissions when it executed the promissory notes. Its basis for this finding was that District Title's President, Mr. Gillman, had actual knowledge of both of the transactions before District Title extended credit to Mr. Forman. This conclusion is amply supported in the record. Evidence indicates that Mr. Gillman, as President of American Title, was aware of and personally participated in the 1967 conveyances. Evidence also indicates that Mr. Gillman, as President of Columbia Title, personally

signed his acceptance on behalf of Columbia Title to the assignment of the commissions it was obligated to pay to Mr. Forman. Given this evidence, the trial court could reasonably find that District Title, with Mr. Gillman as its President, had knowledge of these transfers before it extended credit to Mr. Forman in 1981.[1]

■ We conclude that these findings are supported by the record and are not clearly erroneous.

**IV**

Appellant also contends that the trial court committed errors of law in arriving at its conclusions that District Title was not defrauded by the transfers. It asserts that the trial court failed to apply the presumption set forth in *Edwards v. Entwisle,* 13 D.C. (2 Mackey) 43, 55–56 (1882), that an insolvent debtor's intent to defraud existing creditors is prima facie evidence of fraud against subsequent creditors. Appellant argues that no evidence was presented by the Formans to rebut this presumption after the trial court determined that the 1969 conveyance of the N Street property was made with the intent to defraud Delores Forman and the 1976 assignment was made with the intent to defraud the escrow depositors. Appellant, a creditor whose claims arose subsequent to the conveyances at issue, therefore asserts that fraud in fact against it should be presumed as a matter of law. We disagree.

The *Entwisle* opinion permits a subsequent creditor to establish that it has suffered fraud in fact by showing that the transfer was to the prejudice of the debtor's existing creditors. Such a presumption was an extension of the rule of the statute of 13 Eliz., ch. 5 (1570), which provided that any voluntary conveyance made for no consideration was fraudulent as a matter of law and void as against creditors existing at the time of conveyance. These rules have been altered by the District's

1. *See* note 4, *infra.*

Fraudulent Conveyance Act, D.C. Code § 28–3101 et seq. (1981), however.[2]

██ After the enactment of § 28–3101, a plaintiff is no longer entitled to a legal presumption that a conveyance is fraudulent and should be set aside simply because no consideration was given and the grantor was indebted at the time of the transfer.[3] There can be no legal presumption of fraud under § 28–3101 because this section explicitly provides that the determination of fraudulent intent *must* be made as a matter of fact. Under § 28–3101, creditors with claims at the time of the conveyance, as well as those whose claims arise subsequent thereto, must prove fraud as a matter of fact, and must do so by clear and convincing evidence. *Troshinsky v. Rosin,*

428 A.2d 847, 849 (D.C.1981); *Bennett v. Kiggins,* 377 A.2d 57, 59 (D.C.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978); *Wynne v. Boone,* 88 U.S.App.D.C. 363, 365, 191 F.2d 220, 222 (1951). Under the facts of this case, the trial judge was not compelled to find that District Title had presented clear and convincing evidence of fraudulent intent against it. Rather, the record amply supports the trial court's factual finding that District Title did not establish that the Formans intended to defraud it.

Indeed, appellant cannot claim that it was defrauded by Mr. Forman when it had knowledge that the N Street home and the commissions were no longer his before it extended him coverage or credit.[4] Mr. Gill-

---

2. D.C.Code § 28–3101 provides:
   A conveyance or assignment, in writing or otherwise, of an estate or interest in land or its rents and profits, or in goods or things in action, and a charge upon the same, and a bond or other evidence of debt given, or judgment or decree suffered, with the intent to hinder or defraud persons having just claims or demands, of their lawful suits, damages, or demands, is void as against the persons so hindered or defrauded.
   This section does not affect the title of a purchaser for value, unless it appears that he had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of the grantor. The question of fraudulent intent is a question of fact and not of law.

3. *But see* § 4 of the Uniform Fraudulent Conveyance Act (1978), which provides that every conveyance without consideration which results in insolvency may be set aside as fraudulent without regard to the grantor's actual intent. This remains the common law rule. While the District's Fraudulent Conveyance Act does not follow this position, § 28–3101 is consistent with § 7 of the Uniform Act, however, which provides that actual intent to defraud must be shown if there is fair consideration for the transfer, if the transfer does not render the debtor insolvent, or if, as here, the creditor's claim arose *after* the challenged conveyance. *See generally,* 37 Am.Jur.2d *Fraudulent Conveyances* § 139 (1968 & 1986 Supp.); 5 Am.Jur.2d *Proof of Facts, Fraudulent Conveyance* § 1 (1975 & 1986 Supp.).

4. Appellant argues that the trial court improperly imputed knowledge of the conveyances on the part of its president to District Title. We

find that this argument misses the mark. District Title had the burden of establishing by clear and convincing evidence that it was defrauded. It did not do so. To the contrary, evidence indicates that District Title's President personally participated in both of the conveyances at issue while he served as president of other title insurance companies, and the trial court therefore found as fact that District Title was on notice of the conveyances long before Mr. Gillman asked Mr. Forman to begin doing business with District Title in 1980, and before the promissory notes were issued to it in 1981. Moreover, District Title put forth no evidence in the record to indicate that it was misled by the transactions or relied on Mr. Forman's ownership in these assets when it began to underwrite his real estate transactions. Nor did District Title suggest that Mr. Gillman was in any sense disloyal to it. Such a finding on these facts is not clearly erroneous.
   However, even if we consider the appellant's corporate imputation argument, it is clear that the trial court properly imputed Mr. Gillman's knowledge of the conveyances to District Title. So long as an agent has information in his mind when acting for his principal or acquires it under such circumstances that it can be presumed to be in his mind at the time of the transaction, such knowledge is imputed to the principal even if it was acquired prior to the start of the agency relationship. *Bowen v. Mt. Vernon Savings Bank,* 70 U.S.App.D.C. 273, 275, 105 F.2d 796, 798 (1939). *See also* RESTATEMENT (SECOND) OF AGENCY § 276 (1971); 3 Am.Jur.2d *Agency* § 287 (1986). In this case, evidence was presented which showed circumstances indicating that Mr. Gillman knew or could be presumed to have known of the conveyances at the time District Title extended credit to Mr. For-

man, District Title's president, personally participated in the conveyance of the N Street home and personally accepted the assignment of the commissions on behalf of Columbia Title before he personally solicited Mr. Forman's business on behalf of District Title in 1980. District Title then insured Mr. Forman's settlements and became a creditor after it began to pay on the escrow depositor's claims and received the promissory notes. District Title's knowledge of the transfers of Mr. Forman's assets to Sallie Forman therefore preceded its extension of credit to him. District Title could not have detrimentally relied on these assets when it extended credit to Mr. Forman since it already knew that they were no longer available to him. It therefore cannot now claim that it was hindered or defrauded by their transfer to Sallie Forman. *See Peachtree Bank & Trust Co. v. Atha,* 151 Ga.App. 565, 260 S.E.2d 559 (1979); *Henry S. Miller Co. v. Evans,* 452 S.W.2d 426, 432 (Tex.1970); *Rose v. Morrell,* 128 Vt. 110, 259 A.2d 8, 11 (1969).

### Conclusion

Finding none of appellant's legal contentions persuasive and finding no clearly erroneous factual finding, the trial court's judgment is

*Affirmed.*

man. Mr. Gillman personally participated in both of the transactions and was well acquainted with Mr. Forman. Given the firsthand familiarity of Mr. Gillman with the transactions and his long relationship with Mr. Forman, this knowledge could be found by the trial court to be in his mind when District Title began to underwrite Mr. Forman's settlements and when the promissory notes were delivered. The trial court did not explicitly make a finding that this information was in Mr. Gillman's mind when he solicited Mr. Forman's business and when District Title accepted the promissory notes, but such a finding is implicit in the court's finding that District Title had actual knowledge of the transactions. While legally, District Title had imputed, not actual knowledge, the court's imputation of Mr. Gillman's knowledge to District Title is amply supported by the record.