George W. LANDMAN, Appellant,

v.

Hazel K. LANDMAN, Appellee.

No. 2068.

Municipal Court of Appeals for the
District of Columbia.

Argued Oct. 7, 1957.

Decided Nov. 25, 1957.

Dale L. Button, Washington, D. C., for appellant.

Cornelius H. Doherty, Washington, D. C., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellee Hazel K. Landman sued her husband, George W. Landman, to recover the proceeds of a check drawn by him against a bank account in the joint names of the parties. The trial court, sitting without a jury, gave judgment for the wife and the husband appeals.

From the somewhat conflicting testimony introduced by both parties the lower court made the following findings: In 1947 Mr. and Mrs. Landman opened an account by placing their signatures on a printed form supplied by the bank, the terms of which are set out in the margin.[1] All of the

1. "We, the undersigned, authorize the Bank to recognize any of the signatures subscribed below in payment of funds or transaction of any business for this CheckMaster account. The undersigned, joint depositors, agree each with the other and with the Bank that all sums now on deposit, or heretofore or hereafter deposited by either or both to their credit as joint depositors with all accumulations thereon, are owned by them jointly, with right of survivorship, and shall be subject to check or receipt of either or the survivor of them and payment to or on the check of either or the survivor shall be valid and discharge the Bank from liability. Each of the undersigned appoints the other and for that purpose to endorse any check, draft, note or other instrument payable to the order of the other or both. Payment to or on check of the survivor shall be subject to the

funds deposited to the account, however, consisted of the salary checks of Mrs. Landman. It was the intent of the parties that the money should be used for household and family expenses.

On November 25, 1955, a check for $3,328.80, payable to both parties, was deposited in the account, creating a balance at that time of $4,260.28. This check represented a judgment secured by the Landmans for damages sustained in an automobile collision. Of this amount, $82.50 was for the damage to Mr. Landman's car; the remainder was compensation to Mrs. Landman for her injuries. Within a week Mr. Landman drew a check against the account for $2,700 and appropriated the money to himself. Some nine months later Mrs. Landman discovered the withdrawal and made a demand for the return of the money, which was rejected. She then filed this suit, and obtained a judgment for $2,600,[2] from which this appeal was taken.

■ Appellant's position is that since the deposit agreement made him a "joint" owner of the account, his right to withdraw the money at the time was unrestricted and whatever use he subsequently made of it was immaterial. We do not believe this contention is correct for several reasons.

The printed form which the Landmans used to open the account determined conclusively only their rights with respect to the bank; it had no effect upon the rights of the parties among themselves.[3] The general rule is that a party to a joint bank account may appropriate to himself all or part of the funds without liability to his codepositor only where in fact and in law he is the real owner of the money.[4] Here, there was a finding that all of the money in the account was the property of the wife, and that it was intended to be used only for family expenses. Consequently, the husband had no right, as against the wife's interests, to appropriate the funds to his own uses, and the wife, as the true owner, had the right to follow the money withdrawn.[5] Simply stated, the husband here had the power to withdraw, but not the right to appropriate.

We need not consider whether the wife, by executing the joint deposit agreement, intended to transfer, by gift, an interest *in praesenti* in the funds to the husband, for in his brief he concedes that this case does not involve a "donor-donee relationship."[6] We may add, however, that both the presumptions of law[7] and the evidence in the case are against such a situation.

Affirmed.

laws relating to both Federal and State inheritance and succession taxes and all rules and regulations made pursuant thereto. The rights of the Bank under this agreement shall not be changed or terminated by said depositors or either of them except by written notice to the Bank which shall not effect transactions theretofore made. All transactions between the Bank and the undersigned shall be governed by the rules printed in the Passbook or the Depositor's Agreement governing CheckMaster accounts delivered to and accepted by the undersigned to which the undersigned agrees by the delivery hereof to the Bank."

2. Although the check drawn was for $2,700, no question was raised in the trial ■

court or on this appeal as to the correctness of the amount of the final judgment.

3. Harrington v. Emmerman, 1950, 88 U.S. App.D.C. 23, 27, 186 F.2d 757, 761.

4. See the annotations, 161 A.L.R. 71, 77 A.L.R. 799.

5. Annotation, 77 A.L.R. 799.

6. Appellant's brief, p. 6.

7. Harrington v. Emmerman, supra, note 3; Murray v. Gadsden, 1952, 91 U.S.App. D.C. 38, 197 F.2d 194, 33 A.L.R.2d 554; Imirie v. Imirie, 1957, 100 U.S.App.D.C. 371, 246 F.2d 652.