**ROBERTS & LLOYD, INC., Appellant,**

v.

**Betty R. ZYBLUT and Chester A. Zyblut, Appellees.**

**No. 94–CV–1215.**

District of Columbia Court of Appeals.

Argued Sept. 21, 1995.

Decided March 20, 1997.

---

George W. Campbell, Jr., Arlington, VA, for appellant.

Leonard J. Koenick, Chevy Chase, MD, for appellees.

Before FERREN and RUIZ, Associate Judges, and BELSON, Senior Judge.

RUIZ, Associate Judge:

This appeal presents three questions: 1) Whether the presumption that a married couple owning property jointly hold it as a tenancy by the entireties applies to the joint brokerage accounts at issue in this case, 2) whether a Keogh retirement account owned by a self-employed individual is exempt from garnishment by the owner's creditors, and 3) whether the trial court's determination that the creditor failed to prove, by clear and convincing evidence, that there was a transfer of property with the intent of defrauding or hindering creditors, was clearly erroneous or unsupported by the evidence. We hold that the special presumption applies to the joint brokerage accounts and that there was sufficient evidence on the record to support the trial court's determinations that the presumption was not overcome, and that the creditor failed to show, by clear and convincing evidence, that the Zybluts intended to defraud or hinder their creditors. We also hold that Keogh accounts are not exempt from garnishment. Because the trial court judgment rests, in part, on a contrary conclusion of law with respect to the Keogh account, we affirm in part, reverse in part and remand for further proceedings.

## I.

Appellant, Roberts & Lloyd, Inc., recovered a judgment on a note given by appellee Chester A. Zyblut, but when it went to collect, it found that all of Mr. Zyblut's assets were held as tenancies by the entireties with his wife, appellee Betty R. Zyblut. Because the judgment was against Mr. Zyblut alone, Roberts & Lloyd was unable to levy any of the Zybluts' assets to satisfy the judgment. Consequently, Roberts & Lloyd brought this action against the Zybluts under the Fraudulent Conveyance Act, contending that two brokerage accounts that had been held by them as joint tenants with right of survivorship and a Keogh retirement account in Mr. Zyblut's name had been conveyed to the Zybluts as tenants by the entireties for the purpose of hindering or defrauding it as a creditor of Mr. Zyblut.

The Zybluts opened two accounts with a brokerage firm in mid–1990. Both account agreements stated that, "unless otherwise specified," the accounts were held by the Zybluts as "joint tenants with right of survivorship."[1] Initially, the Zybluts had not "otherwise specified." In July 1991, while Roberts & Lloyd's action on Mr. Zyblut's promissory note was pending, the Zybluts executed new account agreements specifying that the accounts were held as "tenants by the entireties." Similarly, Mr. Zyblut transferred funds from a Keogh account held solely in his name to an account held in the name of both himself and his wife as "tenants by the entireties." It is those changes that Roberts & Lloyd says constituted fraudulent conveyances.[2]

Following a trial to the bench, the trial court granted judgment for the Zybluts. With respect to the jointly-held brokerage accounts, the trial court found:

> The presumption is that when married people own property jointly, they own it as tenants by the entireties. Under the facts of this case, the presumption has not been overcome, nor has Roberts & Lloyd established by clear and convincing evidence that the Zybluts acted to defraud it with respect to the brokerage accounts. Indeed, the Zybluts have established by clear and convincing evidence that they did not.

With respect to the Keogh account, the trial court held that such accounts are exempt from execution by virtue of the federal Employee Retirement Income Security Act; hence, the transfer of funds from Mr. Zyblut's Keogh account to an account held by the Zybluts as tenants by the entireties could

---

1. Mr. Zyblut also opened a third brokerage account, solely in his name, at the same time. The funds from this account were transferred three months later, in August 1990, to one of the Zybluts' joint brokerage accounts.

2. Even after the accounts were established as tenancies by the entireties, another judgment creditor of Mr. Zyblut, seeking to execute on a judgment, attached the brokerage accounts. Mr. Zyblut paid the judgment and the attachment was released. The Zybluts then liquidated all their brokerage accounts and used the proceeds to pay off a mortgage and loan secured by their home, which they owned as tenants by the entireties.

not have defrauded Roberts & Lloyd as Mr. Zyblut's separate creditor. We affirm the judgment with respect to the brokerage accounts, but reverse and remand with respect to the Keogh account.

## II.

■ At the time the challenged transfers occurred, the Fraudulent Conveyance Act provided that:

A conveyance or assignment, in writing or otherwise, of an estate or interest in land ... or in goods or things in action ... with the intent to hinder or defraud persons having just claims or demands ... is void as against the persons so hindered or defrauded.... The question of fraudulent intent is a question of fact and not law.

D.C.Code § 28–3101 (1991).[3] We have held that the party challenging a conveyance has the burden of proving intent to defraud by clear and convincing evidence. *District–Realty Title Ins. Corp. v. Forman*, 518 A.2d 1004, 1008 (D.C.1986). We agree with the trial court that the same standard of proof, clear and convincing evidence, applies to a challenge based on "intent to hinder."

■ Because the distinction is critical to this case, we begin by briefly comparing the incidents of a joint tenancy with right of survivorship and a tenancy by the entireties. First, only a married couple may be tenants by the entireties; a married couple or unrelated persons may be joint tenants with right of survivorship. *Coleman v. Jackson*, 109 U.S.App. D.C. 242, 243, 286 F.2d 98, 99 (1960). Second, both forms of concurrent ownership share one salient feature: the survivor takes the whole property upon his or her cotenant's death. *Id.* at 243, 246, 286 F.2d at 99, 102. Finally, a tenancy by the entireties differs from a joint tenancy with right of survivorship in that a tenancy by the entireties cannot be partitioned during the marriage of the parties without the consent of the cotenants. *Id.; Hogan v. Hogan*, 102 U.S.App. D.C. 87, 87, 250 F.2d 412, 412 (1957); *Tendrich v. Tendrich*, 90 U.S.App. D.C. 61, 62, 193 F.2d 368, 369 (1951) (holding

that court may partition tenancy by the entireties when limited divorce is granted). Consequently, unlike a joint tenancy with right of survivorship, property held by tenancy by the entireties is not subject to execution or levy for the debts of only one of the cotenants. *Held v. McNett*, 154 A.2d 349, 350 (D.C.Mun.App.1959); *Fairclaw v. Forrest*, 76 U.S.App. D.C. 197, 201 & n. 3, 130 F.2d 829, 833 & n. 3 (1942) (citing authorities). Moreover, in the absence of an agreement to the contrary, each spouse retains a tenancy by the entireties in the proceeds from the sale of property held as a tenancy by the entireties. *Held, supra*, 154 A.2d at 350.

■ It is the attribute of tenancy by the entireties that precludes alienation by one spouse, and its corollary that prevents execution of a judgment on property so held by the creditor of only one spouse, that were critical to the decision in this case. A bank account held as a tenancy by the entireties is subject to the same restrictions as any other property similarly held. *See Ridgely v. Ridgely*, 188 A.2d 296, 297 (D.C.1963) (holding that in absence of divorce or agreement, court had no power to order partition of spouses' joint bank account). That does not mean, however, that the "rights and remedies of existing creditors can be obliterated by the simple expedient of erecting a tenancy by the entireties in property that is otherwise vulnerable" to execution. *In re Estate of Wall*, 142 U.S.App. D.C. 187, 191, 440 F.2d 215, 219 (1971). Thus, if the Zybluts' accounts were subject to attachment before the Zybluts executed new agreements changing their status to "tenancies by the entireties," then the change may be attacked as a fraudulent conveyance. *Id.* If, on the other hand, the accounts were, notwithstanding the express language of the original agreements, always held by the Zybluts as "tenants by the entireties," then the new agreements amounted to nothing more than a reformation of the earlier agreements and there would be no "conveyance or assignment" subject to attack under the Fraudulent Conveyance Act.

---

3. The act was superseded by the Uniform Fraudulent Transfer Act of 1995, D.C. Law 11–83,

D.C.Code §§ 28–3101—3111 (1996).

The trial court approached the problem by holding that there is a "presumption" that property jointly held by spouses is held as tenants by the entireties. *Settle v. Settle,* 56 U.S.App. D.C. 50, 8 F.2d 911 (1925). In *Settle,* the court held that "the same words of conveyance which would make other grantees joint tenants will make husband and wife tenants by entireties." *Id.* at 51, 8 F.2d at 912. Thus, courts in this jurisdiction have applied the rule of construction in *Settle* to hold that spouses taking property as joint tenants are deemed to hold it as tenants by the entireties. *See Hogan, supra,* 102 U.S.App. D.C. at 87, 250 F.2d at 412 ("We have held that when property is conveyed to spouses jointly, they own it by the entireties and, without the consent of both spouses, it cannot be partitioned by a court in the absence of divorce." (citing *Settle, supra* )); *Heath v. Heath,* 89 U.S.App. D.C. 68, 69, 189 F.2d 697, 698 (1951) ("Under the doctrine of *Settle,* this Court will continue to construe a conveyance to a husband and wife in joint tenancy as a tenancy by the entireties." (citation omitted)); *Herb v. Gerstein,* 41 F.Supp. 634, 635 (D.D.C.1941); *see also Fairclaw, supra,* 76 U.S.App. D.C. at 199, 130 F.2d at 831 (dictum).

██ Even though *Settle* established a rule of construction that property conveyed to married persons as joint tenants is presumed to be held as tenants by the entireties, *Settle* does not, however, preclude married persons from owning property other than as tenants by the entireties.[4] Moreover, for the *Settle* rule of construction to apply, the critical prerequisite is that the property be held as a joint tenancy. Roberts & Lloyd argues that the presumption in *Settle* does not apply

to the accounts at issue in this case because of another presumption in this jurisdiction, that joint bank accounts are presumed to be for the convenience of the party making deposits to the account and that, absent a showing of donative intent on the part of the party making the deposit, the nondepositing party does not have a property interest in the account. *Imirie v. Imirie,* 100 U.S.App. D.C. 371, 372, 246 F.2d 652, 653 (1957); *Murray v. Gadsden,* 91 U.S.App. D.C. 38, 44, 197 F.2d 194, 201 (1952); *Harrington v. Emmerman,* 88 U.S.App. D.C. 23, 27, 186 F.2d 757, 761 (1950). Although a limited exception has been created, that an account agreement providing that the account is to be held as a joint tenancy is conclusive as between the named account holders on the one hand and the financial institution holding the account on the other, the account agreement is not dispositive of the rights of the account holders with respect to each other, *Harrington, supra,* 88 U.S.App. D.C. at 27, 186 F.2d at 761, even where the account holders are married. *See Imirie, supra,* 100 U.S.App. D.C. at 372, 246 F.2d at 653 (affirming summary judgment for creditor of deceased husband against widow who following husband's death emptied joint accounts that had been used in husband's business).

██ We do not consider that this case brings the *Settle* and *Imirie* presumptions into conflict. Even assuming, without deciding, that the presumption against joint tenancy in bank accounts applies to joint brokerage accounts,[5] the facts of this case, where the brokerage accounts were established by the Zybluts as joint depositors, distinguish this case from the cases in which the presumption against joint tenancy has been ap-

---

**4.** We read *Settle* in the context of the Later-adopted Anti–Sex Discriminatory Language Act, 23 D.C.Reg. 1134, 1152, § 33(a), (b) (1976), which repealed the 1869 Married Woman's Property Act. The statute makes clear that although married couples may continue to own property as tenants by the entireties in the District of Columbia, and indeed may continue to be presumed to do so under *Settle,* they are not to be disabled from owning property in any other way they choose.

The fact that a person is ... married shall not ... impair the rights ... of such person ... to hold ... *in any manner ... property of any kind ....* This section shall not be deemed to affect the law relating to ... ownership of property held by the husband and wife as tenants by the entireties....

D.C.Code § 30–201 (1993) (emphasis added).

**5.** *But see Edstrom v. Kuder,* 351 A.2d 506, 509 n. 7 (D.C.1976), (suggesting that similar rule should apply to jointly held stock certificates, but noting

plied.[6] The cases relied upon by Roberts & Lloyd all dealt with situations where only one of the purported joint tenants made deposits to the joint account. In such cases, a question is raised whether the depositor intended to make a present gift to the joint owner or, rather, intended that the joint owner receive the funds at the depositor's death or merely meant to establish a joint account for convenience. *Prather v. Hill,* 250 A.2d 690 (D.C. 1969). In addition to the joint provenance of the funds deposited in the brokerage accounts, the trial court also relied on Mr. Zyblut's testimony that he always intended the brokerage accounts to be held as tenants by the entireties because during his forty-one years of marriage, he considered that "what was mine was hers, and what was hers was mine." That testimony would support a finding that Mr. Zyblut had a donative intent toward Mrs. Zyblut, supporting the conclusion that notwithstanding the presumption against joint tenancies in bank accounts, the brokerage accounts here were held as joint tenancies. That conclusion, in turn, serves as the prerequisite for applying the *Settle* rule of construction that a joint tenancy held by a married couple is presumed to be a tenancy by the entireties.

▬▬▬ Having applied the presumption that the brokerage accounts were held by the Zybluts as tenants by the entireties, the trial court then considered whether the presumption had been overcome by eight factors identified by Roberts & Lloyd.[7] After considering each of the eights factors, the trial court found that Roberts & Lloyd did not overcome the presumption that the Zybluts owned the brokerage accounts as tenants by the entireties. As discussed above, that conclusion could have ended the inquiry, for if the brokerage accounts were always held as tenants by the entireties, the change in 1991 to make such ownership explicit would not be a "conveyance or assignment" subject to challenge under the Fraudulent Conveyance Act. The trial court, however, took another precautionary step and further found that Roberts & Lloyd had failed to show, by clear and convincing evidence, that the Zybluts changed the ownership of their brokerage accounts in order to defraud or hinder Mr. Zyblut's creditor. Moreover, the trial court found that the Zybluts, by clear and convincing evidence, had established that they had not acted to defraud Roberts & Lloyd. *Id.* Under the statute, "fraudulent intent is a question of fact." D.C.Code § 28–3101. We defer to trial court findings or fact unless they are clearly erroneous or unsupported by the evidence. On the record before us, there is no cause to disturb the trial court's factual finding. We therefore affirm the trial court's judgment for the Zybluts with respect to the brokerage account on the grounds that 1) there was no "conveyance or assignment" because the accounts were held as tenants by

---

that burden of proof should be on party attacking joint tenancy).

**6.** As noted *supra,* at note 1, a small portion of the funds in the disputed accounts came from a brokerage account that Mr. Zyblut established in his sole name. The trial court accepted Mr. Zybluts' testimony that the sole account was the single exception from the joint ownership in which the Zybluts held the rest of their assets. Therefore, the implication is that the bulk of the funds used to establish the brokerage accounts at issue must have been jointly owned by the Zybluts.

**7.** The eight factors were:
1) the express language of the brokerage account agreements that it established a joint tenancy with right of survivorship, unless otherwise specified;
2) the appointment, pursuant to the brokerage account agreements, of each spouse as agent for the other;
3) the indemnification, pursuant to the brokerage account agreement, of the brokerage house for actions taken by either of the account holders;
4) language in the brokerage account agreement referring to community property states;
5) the fact Mr. Zyblut exercised sole control over the brokerage accounts;
6) the fact that Mr. Zyblut was knowledgeable, based on his legal training and career, about the difference between a joint tenancy with right of survivorship and a tenancy by the entireties;
7) Mr. Zyblut's preparation of a financial statement in December 1990 in which he listed the brokerage accounts among his assets, but identified only their home as jointly owned with Mrs. Zyblut; and
8) Mr. Zyblut's statement in a deposition in another case that the brokerage accounts were changed from joint tenancies to tenancies by the entireties.

the entireties even before the challenged transfer in 1991, and 2) even if there had been, Roberts & Lloyd failed to prove, by clear and convincing evidence, that the Zybluts did so with fraudulent intent.

### III.

 With respect to the second aspect of this appeal, we conclude that Mr. Zyblut's Keogh account was not shielded from his creditors by virtue of section 206 of ERISA, 29 U.S.C. § 1056(d) (Supp.1993). Section 1056(d) provides, "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." Pursuant to statutory authority, *id.* § 1135, the Secretary of Labor has promulgated regulations defining the term "pension plan" for purposes of Title I of ERISA, of which § 1056 is a part. That definition excludes Keogh plans in which a sole proprietor is the only participant. 29 C.F.R. § 2510.3–3(a). The regulatory definition is properly applied to § 1056(d) in particular, because that section of ERISA specifies what a pension plan "shall provide" and the Secretary of Labor is charged with enforcing the requirements of that section. 29 U.S.C. § 1132(a)(5).

The regulatory definition comports with both the statutory language and the legislative history of ERISA. The statute defines "pension plan" to mean a plan established by an "employer" to provide retirement income to "employees." 29 U.S.C. § 1002(2)(A) (1988). An "employee" is one employed by an "employer," who is any person acting directly as an employer or indirectly in the interest of employer, in relation to a plan. *Id.* § 1002(5), (6). In view of the statutory scheme, which was designed to protect the interests of employees against the misconduct of their employers, it makes sense to construe the statute to require that the employer and employee be different persons. The legislative history bears that out. The House Report stated that the part of the bill encompassing section 206 excluded "Keogh plans benefiting the self-employed and owner-employees." Employee Retirement Income Security Act, Pub.L. No. 93–406, 1974 U.S.C.C.A.N. (93 Stat.) 4660. Similarly, the Senate Report states that "[t]he Act does not apply ... to plans for the self-employed." *Id.* at 4873. Hence, Mr. Zyblut's Keogh account was not shielded from his creditors before he conveyed it to himself and his wife as tenants by the entireties. It is for the trial court to determine, as a question of fact, whether Mr. Zyblut's transfer of the funds from his Keogh account to an account held as tenants by the entireties with his wife was for the purpose of hindering or defrauding his creditors.

### Conclusion

We affirm the trial court's judgment for the Zybluts with respect to the brokerage accounts. Because the trial court's error of law with respect to the Keogh account affected and pretermitted its findings of fact on the issue of intent to defraud or hinder Roberts & Lloyd, we remand for further proceedings consistent with this opinion.

*So ordered.*