Laurie MORRISON, Appellant,

v.

Opal POTTER, Appellee.

No. 97–CV–1902.

District of Columbia Court of Appeals.

Argued June 7, 2000.
Decided Dec. 28, 2000.

Roger A. Morrison, Washington, for appellant.

Martin S. Protas, for appellee.

Before TERRY, SCHWELB, and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

This matter comes before the court on appellant, Laurie Morrison's, appeal of the trial court's denial of her Motion for Recovery of garnished funds and subsequent Motion for Summary Judgment. The trial court held that the funds in a bank account held jointly by Morrison and her husband (Roger Morrison) were garnishable, and thus condemned the funds in favor of Opal Potter, who held a judgment against Mr. Morrison, individually. The issue on appeal is whether the trial court erred in concluding as a matter of law that the funds in the joint bank account were within the reach of Mr. Morrison's individual creditors. For the following reasons, we reverse and remand.

I.

On March 17, 1986, Donald Potter obtained a foreign judgment against Roger Morrison in the sum of $347,987.83 from the United States District Court for the District of Colorado. Following Donald Potter's death, Opal Potter, his wife, filed a Motion for Substitution of Parties on November 10, 1994. This motion was granted by the trial court. On June 2, 1997, as part of the foreign judgment, Opal Potter proceeded with a writ of attachment upon a Citibank checking account held jointly by Roger Morrison and his wife Laurie Morrison.[1] Laurie Morrison has brought this appeal challenging the garnishment of the monies contained within the Citibank account.

The writ of attachment referred only to the defendant, Roger Morrison, and was served on Citibank. Shortly after the writ was issued, Laurie Morrison made three deposits of her own funds into the Citibank account. The total amount deposited by Laurie Morrison was $11,500. After a withdrawal, $10,843.20 remained in the account that was subsequently placed on hold by Citibank in response to the June 2,

---

1. The names on the Citibank account were L. Morrison and R. Morrison.

1997 writ of attachment. On June 11, 1997, Citibank sent a garnishment notice to the Morrisons.

On June 30, 1997, Laurie Morrison filed a Motion for Judgment of Recovery as to the garnished funds. On July 2, 1997, the clerk of the court, unaware of Morrison's pending motion, issued a condemnation judgment authorizing Citibank to transfer the garnished funds to Potter. On July 16, 1997, Citibank mailed out a check for $10,843.20 to Potter. On July 17, 1997, the clerk vacated the condemnation judgment, realizing that Laurie Morrison had filed a motion claiming the garnished funds before the July 2 condemnation judgment. Additionally Laurie Morrison filed for an ex parte protective order, requesting that Potter's counsel hold the funds received from Citibank. This motion was refused by the clerk. On July 22, 1997, the trial court denied Laurie Morrison's Motion for Judgment of Recovery. On August 7, 1997, Laurie Morrison filed a Motion for Rehearing or Alteration of Judgment, and on September 24, 1997, she filed a Motion for Summary Judgment. On September 26, 1997, after a hearing was held, the trial court denied both motions without a written opinion and directed the Citibank monies to be distributed to Potter.

According to Laurie Morrison's affidavit, even though the Citibank documents did not contain a provision allowing them to elect to hold the account as tenants by the entireties, the bank account in question was established by the Morrisons for their joint purposes with the right of survivorship, and they both intended to hold the account as tenants by the entireties.

## II.

■ The trial court concluded that the Morrisons did not hold the Citibank account as tenants by the entireties, and thus the funds were subject to garnishment by Mr. Morrison's individual creditor. Ms. Morrison argues that under District of Columbia law, a joint account held by a husband and wife is presumed to be a

tenancy by the entireties, and as such it is not subject to garnishment for the individual debts of one of the account holders. We agree with the appellant, and reverse the judgment of the trial court.

■ Although many jurisdictions have abolished the common law right of tenancy by the entireties, the District of Columbia still recognizes it "with most of its common law features still intact." *In re Wall's Estate*, 142 U.S.App.D.C. 187, 189, 440 F.2d 215, 217 (1971) (referencing *Coleman v. Jackson*, 190 U.S.App.D.C. 242, 243, 286 F.2d 98, 99 (1960); *Settle v. Settle*, 56 App.D.C. 50, 51, 8 F.2d 911, 912 (1925)) (other citations omitted). A tenancy by the entireties is " 'essentially a joint tenancy, modified by the common-law theory that husband and wife are one person.' " *See id.* (citing *Settle*, 56 App.D.C. at 51, 8 F.2d at 912). The characteristics of a tenancy by the entireties are: a right of survivorship, an inability of one spouse to alienate his interest, and a broad immunity from claims by separate creditors. *See In re Wall's Estate*, 142 U.S.App.D.C. at 191, 440 F.2d at 219; *see also* BLACK'S LAW DICTIONARY 1022 (6th ed.1990) (commenting that a tenancy by the entireties is "created between a husband and wife and by which together they hold title to the whole with right of survivorship so that, upon death of either, [the] other takes [the] whole ... and [n]either party can alienate or encumber the property without the consent of the other"). A tenancy by the entireties can exist whether the subject matter is real or personal. *See In re Wall's Estate*, 142 U.S.App.D.C. at 191, 440 F.2d at 219; *see also Flaherty v. Columbus*, 41 App.D.C. 525, 529 (1914).

■ In the case of a tenancy by the entireties, each spouse is entitled to the enjoyment and benefits of the whole property held by the entireties. *See In re Wall's Estate*, 142 U.S.App.D.C. at 190, 440 F.2d at 218; *see also* ROGER A. CUNNINGHAM, ET AL., THE LAW OF PROPERTY § 5.5, at 204 (2nd ed.1993). Although property

subject to a tenancy by the entireties is liable for the spouses' joint debts and for the individual debts of the surviving co-tenant, it is unreachable by creditors of one but not of both of the tenants. *See Finley v. Thomas*, 691 A.2d 1163, 1166 (D.C.1997) (noting that a tenancy by the entireties estate is not subject to execution or levy for the debts of only one of the co-tenants); *In re Wall's Estate*, 142 U.S.App.D.C. at 193, 440 F.2d at 220 (holding that "absent a different treatment by the [appellants], they held the sale proceeds as tenants by the entireties in prolongation of their preexisting co-tenancy in the realty, and held it free from the claims of separate creditors of either"); CUNNINGHAM, THE LAW OF PROPERTY § 5.5, at 206 n. 19 (commenting that "one spouse alone cannot convey, encumber, or subject to the satisfaction of creditors' claims either that spouse's possessory estate for the joint lives of the co-tenants or that spouse's contingent right of survivorship").

▉▉▉ The trial court concluded that the account created by the Morrisons was an ordinary joint account. Under District of Columbia law, however, "the language in an instrument which would create a joint tenancy will make a husband and wife owners by the entireties." *Warman v. Strawberry*, 587 F.Supp. 109, 110 (D.C. 1983) (referencing *Settle*, 56 App.D.C. at 51, 8 F.2d at 912).[2] Thus, this jurisdiction essentially employs a presumption that property, including bank accounts, held by a husband and wife as joint tenants is held by the entireties, unless proof of a contrary intent leads to a different result.[3] *See id.* (holding that the language in the Joint Shared Account Agreement was inconsistent with the creation of an estate by the entireties, and that the expression of the intent of the joint owners of the account was an interest as joint tenants and not as estate by the entireties).

In this case, the record reflects that the Citibank account was held jointly in the names of L. Morrison and R. Morrison, husband and wife; the account was opened in the names of both parties on the same date; and the Morrisons had been married at the time of opening the account. No evidence was presented by the appellee that the Morrisons did not intend to hold the account by the entireties. *See id.* In fact, the only evidence in the record addressing this issue is Mrs. Morrison's affidavit, which states that the account was set up with the intent that a tenancy by the entireties be created. Accordingly, under the law of the District of Columbia, the Morrisons held the Citibank account as tenants by the entireties.

▉▉▉ Potter argues that despite the presumption, the Morrison's bank account

---

**2.** In *Roberts & Lloyd, Inc. v. Zyblut*, 691 A.2d 635, 639 (D.C.1997), this court articulated a finding that the account was intended to be held jointly was a prerequisite to applying the *Settle* rule of construction. Although the account agreement with the bank provided that the Morrisons held the account as joint tenants and the trial court assumed the same, in *Zyblut* we opined that the language in the account agreement, while binding between the parties and the financial institution, "is not dispositive of the rights of the account holders with respect to each other, even where the account holders are married." *Id.* (citations omitted). In light of the fact that Mrs. Morrison was the sole depositor of the funds in the account, it is first necessary to discern that she intended to "make a present gift to the joint owner[.]" *Id.* at 640. In this case, Mrs. Morrison's affidavit declares that since the inception of the account she intend-

ed to hold it as an entireties account with her husband, thus illustrating that she possessed the requisite donative intent toward Mr. Morrison to support the conclusion that the account was held jointly. *See id.*

**3.** With respect to personal property, other jurisdictions do not employ such a rule of construction, but require that a husband and wife offer proof of their intent to hold a joint bank account by the entireties. *See Beal Bank v. Almand & Assoc.*, 710 So.2d 608, 609 (Fla.Dist.Ct.App.1998) (expressing that the burden is on the married couple to show "that the spousal accounts at issue were created and held with the intent that they were tenancies by the entireties"). However, an offer of such proof has not been required in the District of Columbia. *See Warman*, 587 F.Supp. at 110.

is a joint account and not a tenancy by the entireties because there is nothing in the bank account agreement that prevents either one of the Morrisons from withdrawing from the account the entire amount of money in the account without the express consent of the other. Potter concludes that because a basic characteristic of a tenancy by the entireties is that one spouse cannot alienate the property, the account held by the Morrisons was simply a joint account. *See Zyblut, supra* note 2, 691 A.2d at 638 (explaining that a tenancy by the entireties "cannot be partitioned during the marriage of the parties without the consent of the co-tenants"). Thus, because the joint account opened by the Morrisons allows one spouse to unilaterally withdraw funds, either spouse has the ability to alienate the joint property, and one of the essential characteristics of an entireties estate is violated. Despite Potter's argument, however, because the form of a bank account differs significantly from normal transactions with real property, courts have not interpreted the unilateral right of a spouse to withdraw funds as alienation of the marital property. Instead, "[w]here a deposit is made payable to either spouse, agency or authority exists by implication, and the husband or the wife may, from that authority, withdraw the entire account, but the money thus withdrawn is impressed with the entirety provision that it is the property of both[.]" *Madden v. Gosztonyi Sav. & Trust Co.*, 331 Pa. 476, 200 A.624, 630 (1938); *see also First Nat'l Bank of Leesburg v. Hector Supply Co.*, 254 So.2d 777, 781 (Fla.1971).

Indeed, with respect to a joint bank account held by a husband and wife, each spouse acts as the other spouse's agent, and both have properly consented to the other spouse's withdrawals in advance, thus satisfying the non-alienation requirement of a tenancy by the entireties. This concept of agency between spouses was recognized by the District Court of Appeal of Florida, when the court articulated that "so long as [the bank signature card] contains a statement of permission for one spouse to act for the other, the requirement of form of the [entireties] estate will have been met."[4] *Beal*, 710 So.2d at 611 (Cobb, J. concurring in part, dissenting in part). For this reason, "the authority of one spouse, acting for the other, to withdraw funds from an account ... d[oes] not alter the inherent rights and obligations of tenants by the entireties, each to the other, in respect to those funds." *Id.* Thus, the unilateral right of one spouse to withdraw funds from a joint bank account does not defeat a tenancy by the entireties estate. *See id.* at 613; *see also Madden*, 200 A. at 630; *First Nat'l Bank of Leesburg*, 254 So.2d at 781; *In re Shaland*, 133 B.R. 166 (S.D.Fla.1991) (holding that a spouse's ability to liquidate assets in a joint bank account and withdraw funds does not defeat the tenancy by the entireties); *In re Smulyan*, 98 F.Supp. 618, 620 (M.D.Pa.1951) (articulating that "the Pennsylvania Supreme Court has repeatedly held that ... the fact that either spouse has the power to withdraw funds [from joint bank accounts] ... does not alter the character of estate"); *Hoyle v. Hoyle*, 66 A.2d 130, 132 (Del.Ch.1949) (expressing that in Delaware, a joint bank account, though in such form as to permit either husband or wife to withdraw, is a tenancy by the entireties, in the absence of evidence to the contrary); *Grahl v. Davis*, 971 S.W.2d 373, 379 (Tenn.1998) (same).[5]

4. We think it is implicit that in every joint account where a cotenant has the unfettered ability to withdraw funds from the account, each tenant is required by the bank to authorize such transactions on the bank signature card.

5. We are apprised that with respect to a joint bank account, if a debtor spouse has the unilateral right to withdraw funds, the government is able under the Internal Revenue Code to place a tax levy on the property, although it is held by the entireties. However, "[t]he Supreme Court acknowledged that if money is held by a husband and wife in a joint bank account as tenants by the entireties under applicable state law 'the Government could not use the money in the account to satisfy

■ Accordingly, we hold that the joint bank account held by the Morrisons, notwithstanding the husband's unilateral right to withdraw funds, is presumed to be a tenancy by the entireties, and the funds in the Citibank account cannot be attached by the husband's individual creditors. Therefore, the judgment of the Superior Court is reversed, and the case is remanded with directions to enter judgment for Laurie Morrison.[6]

*So ordered.*

the tax obligation of one spouse,' notwithstanding the propriety of the [tax] levy." *Internal Revenue Service v. Gaster,* 42 F.3d 787, 791 (3d Cir.1994) (citing *United States v.Nat'l Bank of Commerce,* 472 U.S. 713, 729 n. 11, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985)). Thus, although the unilateral right of one spouse to withdraw funds allows for a tax levy under the Internal Revenue Code, it does not allow the Internal Revenue Service to condemn those funds that are found to be held by the entireties under state law. Clearly, this line of government tax levy cases is easily distinguished from and entirely consistently with our reasoning in the instant case.

6. In addition, the record reflects that the monies in the Citibank account belonged exclusively to Laurie Morrison. According to *Landman v. Landman,* this court has held that with a joint bank account, even if not deemed a tenancy by the entireties, a co-party may "appropriate to himself all or part of the funds without liability to his co-depositor only where in fact and in law he is the real owner of the money." 136 A.2d 392, 393 (D.C. 1957). In *Landman,* the joint bank account was held in names of husband and wife and consisted of funds belonging entirely to the wife. The court found that the husband had no right to use the funds for his own use. *See id.* Because the record in this case reflects that the monies deposited into the Citibank account were owned entirely by Mrs. Morrison, along the lines of *Landman,* the husband's individual creditor could not attach the funds in bank account for this reason also.

Moreover, we think it important to note that there were no allegations of fraud in this case.