*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 19-CV-1051 & 20-CV-71

CHARLOTTE R. BLOUNT, APPELLANT,

V.

SQUIRE PADGETT, ET AL., APPELLEES.

Appeals from the Superior Court
of the District of Columbia
(CAM-1465-14 & CAB-3605-19)

(Hon. William Jackson, Trial Judge)

(Submitted June 23, 2021                    Decided October 14, 2021)

Charlotte R. Blount, *pro se.*

*David H. Dupree* was on the brief for appellee Eleanor Padgett.

Before GLICKMAN, THOMPSON[*], and MCLEESE, *Associate Judges*.

---

[*] Judge Thompson was an Associate Judge of the court at the time of submission. Although her term expired on September 4, 2021, she will continue to serve as an Associate Judge until her successor is confirmed. *See* D.C. Code § 11-1502 (2012 Repl.). She was qualified and appointed on October 4, 2021, to perform judicial duties as a Senior Judge and will begin her service as a Senior Judge on a date to be determined after her successor is appointed and qualifies.

THOMPSON, *Associate Judge*:  Appellant Charlotte R. Blount appeals from two rulings of the Superior Court: an October 4, 2019, order denying her request for a "Determination of Dual Ownership" and for a writ of fieri facias as to the real property located at 1501 Kalmia Road, N.W. (the "Kalmia Road property"); and an October 15, 2019, order dismissing as moot her complaint alleging that defendants/appellees Squire Padgett, Eleanor Padgett, and David Dupree effected a fraudulent transfer of the Kalmia Road property.[1]  We affirm.

## I.  Factual and Procedural Background

In 2014, appellant Blount brought a legal malpractice action (2014 CA 1465 (hereafter, the "2014 case") against her former attorneys, Squire Padgett and Lathal Ponder, seeking damages for their alleged negligence in handling an employment discrimination lawsuit.  In June 2015, Ms. Blount obtained a default judgment

---

[1] Eleanor Padgett filed a brief on behalf of herself and appellee Dupree (Ms. Padgett's attorney).  Appellee Squire Padgett did not file a brief, but Eleanor Padgett's brief represents that Squire Padgett joins in her brief.

Eleanor Padgett's brief asserts that Ms. Blount "appeals the denial of her motion to Alter, Amend or Vacate [the] Order Granting [the] Motion to Dismiss[,]" but the Notice of Appeal in No. 20-CV-71 identified only the dismissal order as the order appealed.  In any event, our analysis below addresses why the January 14, 2020, order denying Ms. Blount's Super. Ct. Civ. R. 59(e) motion was correctly decided.

against them for over $1 million, a judgment for which they are jointly and severally liable. After obtaining the judgment, Ms. Blount began efforts to collect on it. On or about July 15, 2015, she recorded her judgment among the land records in the District of Columbia Office of the Recorder of Deeds. In addition, in February 2017, she filed in the land records a Notice of Lis Pendens "against any sale [o]r transfer of title" of the Kalmia Road property, which was owned by appellees Squire Padgett and Eleanor Padgett as tenants by the entirety.

The Padgetts, who married in January 1970, acquired the Kalmia Road property by deed dated September 30, 1975, which conveyed the property to them as "tenants by the entirety[.]" At the time Ms. Blount filed her lis pendens notice in February 2017, the Padgetts had been living separate and apart for almost twenty years. Eleanor Padgett informed the Superior Court that during that time she "has been solely responsible for mortgage, taxes, repairs and any other concern, financial or otherwise, related to the property." In August 2018, after some delays that they represent related to complications attendant to Squire Padgett's tax-lien situation, the Padgetts executed a "Marital Dissolution Agreement" (the "property settlement agreement") in anticipation of divorce, and thereafter filed their petition for absolute divorce on September 4, 2018. Their property settlement agreement was incorporated in the Judgment of Final Divorce

that the Superior Court Family Division entered on September 27, 2018, and that became final on October 27, 2018. In the property settlement agreement, Squire Padgett agreed to relinquish all right, title, and interest he had in the Kalmia Road property and to deed the property to Eleanor Padgett. He executed a warranty deed conveying that interest on September 27, 2018, the same day the divorce decree was entered.

As part of her efforts to collect on the malpractice judgment, Ms. Blount filed in the 2014 case a motion for Determination of Dual Ownership, in which she sought a writ of fieri facias[2] and a determination that she could attach Squire Padgett's share of the Kalmia Road property. Eleanor Padgett moved successfully to intervene in the post-judgment collection proceedings.[3] For her part, Ms. Blount

---

[2] "A writ of *fieri facias* is a . . . 'writ of execution that directs a marshal or sheriff to seize and sell a defendant's property to satisfy a money judgment.'" *Fid. Nat'l Title Ins. Co. of New York v. Tillerson*, 2 A.3d 198, 199 n.2 (D.C. 2010) (quoting BLACK'S LAW DICTIONARY 659 (8th ed. 1999)).

[3] Ms. Padgett also moved to cancel the "false notice of *lis pendens*[.]" She argued that the lis pendens notice was improper because the underlying malpractice lawsuit was not related to the property, and because an attempt to collect on a judgment does not create a case related to a defendant's property that is unrelated to the underlying litigation. *See Tillerson*, 2 A.3d at 202 ("Actions to recover a debt . . . do not give rise to *lis pendens* because no specific property is designated for relief in the judgment." (internal quotation marks omitted)). The Superior Court explained that in any event, "[a] lis pendens doesn't give you any rights . . . it's just a notice to third parties[.]"

took the additional step of filing a complaint pursuant to D.C. Code § 28-3104 (2012 Repl.), entitled "Verified Complaint for Fraudulent Conveyance of Title, Concealment to Commit A Fraud, Declaratory Relief to Declare Title in the Names of Both Parties and to Levy Real Property Located at 1501 Kalmia Road NW, Washington, DC 20012 and Damages" No. 2019 CA 000075 B (the "2019 case" or the "2019 complaint"). The Superior Court consolidated the 2019 case with the 2014 (collections) case.

On October 4, 2019, after a series of hearings, the Superior Court denied Ms. Blount's motion for a determination of dual ownership, noting that "regardless of the transfer that took place in late 2018 [in connection with the divorce proceedings], it is undisputed that when [Ms. Blount] initially attempted to attach the property in early 2017, [it] was owned by the Padgetts as tenancy by the entirety." The court reasoned that Ms. Blount has "a judgment against Squire Padgett but not Eleanor Padgett," that "[t]he law is clear that the debt of one spouse cannot reach . . . property [owned as tenants by the entirety,]" and therefore that Squire Padgett's debt to Ms. Blount "is not a joint debt where the property may be reached by a creditor." On October 15, 2019, the court entered its order dismissing the 2019 case as moot, explaining that there were "no outstanding

claims remaining . . . due to the resolution of the topic regarding the property in the principal [i.e., 2014] case." The instant appeals, which we consolidated, followed.

## II. Applicable Law

"The doctrine of tenancy by the entireties[, which] has long been established in the law of the District of Columbia[,]" "rests on the common law concept of husband and wife as a single, indivisible unit." *Clark v. Clark*, 644 A.2d 449, 450 (D.C. 1994). Tenants by the entireties hold property "in its entirety—without undivided shares[.]" *Id.* (quoting 4A RICHARD R. POWELL, THE LAW OF REAL PROPERTY ¶ 620[3] (1991)). "Although property subject to a tenancy by the entireties is liable for the spouses' joint debts and for the individual debts of the surviving co-tenant, it is unreachable by creditors of one but not of both of the tenants." *Morrison v. Potter*, 764 A.2d 234, 236-37 (D.C. 2000); *see also Finley v. Thomas*, 691 A.2d 1163, 1164 (D.C. 1997) (explaining that a tenancy by the entireties estate is not subject to execution or levy for the debts of only one of the co-tenants). The tenancy by the entireties doctrine indicates "a preference for marital community interests over the often competing interests of creditors." *Benson v. United States*, 442 F.2d 1221, 1225 (D.C. Cir. 1971). The "solid" policy justification is that "the marital relationship is well served by a form of

coownership safeguarding marital property from legal hazards which other types [of tenancy interests] leave as exposures." *In re Wall's Estate*, 440 F.2d 215, 218 (D.C. Cir. 1971). Although the characteristics of a tenancy by the entireties include "an inability of one spouse to alienate his interest," *Morrison,* 764 A.2d at 236, one spouse can voluntarily "relinquish [and convey] his or her interest to the other." *Clark*, 644 A.2d at 452 (citing *Am. Wholesale Corp. v. Aronstein,* 10 F.2d 991, 992 (D.C. Cir. 1926) ("*Aronstein*")).

D.C. Code § 16-910 (2021 Supp.) governs the disposition of tenancy-by-the-entireties property upon a divorce. It provides that upon the entry of a final decree of divorce, "in the absence of a valid antenuptial or postnuptial agreement resolving all issues related to the property of the parties," the Superior Court shall "(a) assign to each party his or her sole and separate property" and

> (b) value and distribute all other property and debt accumulated during the marriage or domestic partnership that has not been addressed in a valid antenuptial or postnuptial agreement or a decree of legal separation, regardless of whether title is held individually or by the parties in a form of joint tenancy or tenancy by the entireties, in a manner that is equitable, just, and reasonable, after considering all relevant factors, [including, e.g., "each party's contribution to the acquisition, preservation, appreciation, dissipation, or depreciation in value of the assets which are subject to distribution"].

*Id.* As its references to an antenuptial agreement or postnuptial agreement indicate, § 16-910 allows the spouses to enter into an agreement "to deal with their property as they wish," *Alves v. Alves*, 262 A.2d 111, 118 (D.C. 1970), and "to determine between themselves what was equitable," *Webster v. Walker (In re Barkats)*, No. 14-00053, 2020 Bankr. LEXIS 940, at *40 (Bankr. D.D.C. Mar. 31, 2020); *see also id.* at *5, 37, 40 (rejecting creditor's argument that upon being divorced, two ex-spouses each became a 50% owner of the property in question as tenants in common, because the ex-spouses' marital settlement agreement, which divided their interests in the property differently, governed what interests the ex-spouses had). Likewise, when the court makes a division of property under § 16-910(b), "[t]he requirement . . . that the court distribute property 'in a manner that is equitable, just and reasonable, after considering all relevant factors' does not mean that marital property must be divided equally." *Webster v. Hope* (*In re Hope*), 231 B.R. 403, 414 (Bankr. D.D.C. 1999) (citing *Burwell v. Burwell*, 700 A.2d 219, 223 (D.C. 1997) ("The divorce law contains no presumption in favor of an equal distribution of property[.]")); *Barbour v. Barbour*, 464 A.2d 915, 921 (D.C. 1983) (same)).

Under § 16-910, the Superior Court must "adjust and apportion property rights . . . in the same proceeding in which the divorce decree is entered"; thus, title

as determined by the court "vests immediately after the divorce in the proper parties and there is no need for an interim allocation of interests as tenants in common." *Argent v. Argent*, 396 F.2d 695, 698 (D.C. Cir. 1968).[4] Thus, a lien that cannot attach to property held as tenants by the entireties during a debtor's marriage will not necessarily attach to the property upon the debtor's divorce.[5] *Cf. In re Barkats*, 2020 Bankr. LEXIS 940 at \*44-46 (concluding that where a marital settlement agreement, requiring the husband to convey his interest in tenancy-by-the-entireties property to the wife, was entered into before the divorce took effect and was incorporated into the judgment of final divorce, the judgment lien held by the husband's creditors "only attached to whatever interest [the husband] had in the

---

[4] As we noted in *Davis v. Davis*, 957 A.2d 576, 579 (D.C. 2008), "[w]e are bound by *Argent* because it was decided prior to February 1, 1971. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971) (decisions of the United States Court of Appeals for the District of Columbia Circuit prior to February 1, 1971, constitute the case law of the District of Columbia)." Although the D.C. Circuit opined, in a February 12, 1971, post-*Argent* decision that is not binding on this court, that "[t]he better rule," and the "majority view in other jurisdictions," "would seem to be that upon dissolution of the tenancy by the entirety, the parties became tenants in common," *Sebold v. Sebold*, 444 F.2d 864, 871 (D.C. Cir. 1971), that is not the immutable rule under District of Columbia law.

[5] The law appears to be otherwise in some other jurisdictions. *See, e.g., Branch Banking & Trust Co. v. Wright*, 328 S.E.2d 840, 842 (N.C. Ct. App. 1985) ("[T]he estate of a tenancy in common of necessity intervenes between absolute divorce and award of title pursuant to equitable distribution when property was held by the entireties[,]" such that "[o]n divorce the lien of the deed of trust upon which plaintiff seeks to recover attached to defendant husband's one-half undivided interest in the property.").

Property after the divorce," which was governed by the marital settlement agreement). This court did say in *Travis v. Benson*, 360 A.2d 506 (D.C. 1976), that "[t]he entry of a final divorce decree dissolves the tenancy by the entirety and converts it into a tenancy in common[,]" leaving the trial court "then authorized to apportion the property among the parties to the divorce as it sees fit." *Id.* at 509. But the *Travis* court explicitly recognized that the automatic dissolution of the tenancy by the entireties "applies only to property in which a tenancy by the entirety is dissolved by operation of the statute" and thus did not override the divorcing parties' agreement pertaining to their property or "affect the general equitable power" of the court to adjudicate concerning the parties' respective rights in property acquired by them during their marriage. *Id.* at 509 & n.1.[6] Indeed, the *Travis* court noted that the D.C. Circuit earlier gave effect to the Travis/Benson property settlement agreement that "preserve[d] the incidents of the tenancy by the

---

[6] Notably, too, the *Travis* court was applying the then-current (1967) version of D.C. Code § 16-910, which provided in pertinent part that "[u]pon the entry of a final decree of . . . absolute divorce, in the absence of a valid antenuptial or postnuptial agreement in relation thereto, *all property rights . . . in . . . [the] tenancy by the entirety shall stand dissolved*, and, in the same proceeding in which the decree is entered, the court *may* award the property to the one lawfully entitled thereto or apportion it in such manner as seems equitable, just, and reasonable" (emphases added). The statute as it reads currently (and as it read at the time of the Padgetts' divorce) omits the "tenancy by the entirety shall stand dissolved" language and provides that the court "shall" assign and distribute property in the same proceeding in which the divorce decree is entered.

entirety after the divorce," with the result that, upon the parties' divorce, "a tax lien filed against the husband did not attach to property held by the parties as tenants by the entirety." *Id.* at 510 (citing *Benson v. United States*, 442 F.2d at 1224).[7]

The District of Columbia Uniform Fraudulent Transfer Act ("DC UFTA") provides in pertinent part that:

> (a) A transfer made, or obligation incurred, by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor[.]

D.C. Code § 28-3104(a)(1). The term "'[t]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of, or parting with, an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." D.C. Code § 28-3101(12). The term "'asset' means property of a debtor, but does not include . . . (C) [a]n interest in property held in tenancy by the entireties to the extent it is not

---

[7] In *Kleiman v. Kleiman*, 633 A.2d 1378 (D.C. 1993), too, this court acknowledged that "the rule in *Travis*" (about divorce dissolving the tenancy by the entirety and converting it into a tenancy in common) may not apply when property interests are "decreed by the court under the terms of a divorce decree." *Id.* at 1381 n.5.

subject to process by a creditor holding a claim against only one tenant." D.C. Code § 28-3101(2)(C).

### III.   Analysis

Ms. Blount contends that the Padgetts "became tenants in common [at the very moment] when they obtained a divorce and attached without merging the settlement agreement executed [before their divorce] on August 9, 2018[,]"[8] with the result that Ms. Blount's "recorded Judgment immediately attached to S. Padgett's 50 percent interest in the property." Ms. Blount argues that the Superior

---

[8] Ms. Blount appears to imply that the fact that the property settlement agreement was not merged in the divorce decree should affect our resolution of the issues. But the incorporation of the property settlement agreement in the divorce decree without merger simply means that the court will enforce the agreement by its terms rather than potentially revise it according to any changed circumstances the parties may claim. *Compare Clark v. Clark,* 535 A.2d 872, 876 (D.C. 1987) ("A separation agreement which is not merged in the final judgment of divorce is governed by the law of contracts."), and *King v. King*, 579 A.2d 659, 662 (D.C. 1990) (quotation marks omitted) (quoting *Spencer v. Spencer*, 494 A.2d 1279, 1285-86 (D.C. 1985)) (explaining that "our approach to settlement agreements that have not been merged into divorce decrees . . . [is that] the court will leave the parties to continue in their relationship under the agreement"), *with Mazza v. Hollis*, 947 A.2d 1177, 1179-80 (D.C. 2008) ("[I]f a settlement agreement is merged into the trial court's order of divorce, . . . the parties' agreement has been adopted by the court as its own determination of the proper disposition . . . [, and the] court then has discretion to modify its own order based on a showing by either party of a material change in the circumstances[.]") (internal quotation marks, brackets, and citations omitted).

Court "could not rely at all on a tenancy (entirety) that did not exist on October 4, 2019 to deny Blount's Motion for Determination of Dual Ownership."

We disagree. Ms. Blount's judgment lien, which she seems to acknowledge did not attach to the Kalmia Road property while it was held by the Padgetts as tenants by the entireties, did not automatically attach to Squire Padgett's "share" of the property upon the divorce, because Squire Padgett had no such share. The divorce decree distributed the Padgetts' tenancy-by-the-entireties property by incorporating the Padgetts' written agreement that Squire Padgett would convey his interest in the Kalmia Road property to Eleanor Padgett upon the divorce. Squire Padgett executed a warranty deed accomplishing precisely that on the same day the divorce decree was entered, such that there was no interim or intervening period when the Padgetts' tenancy by the entireties became a tenancy in common that allowed the judgment lien to attach to Squire Padgett's divided share of the property. The status of the Kalmia Road property at the time the Superior Court denied Ms. Blount's motion for a determination of dual ownership was that the property was owned solely by Eleanor Padgett, as resolved by the Padgetts' property settlement agreement, the divorce decree, and the warranty deed.[9]

---

[9] Even in the absence of the Padgetts' property settlement agreement, it seems likely that the court would have assigned the Kalmia Road property to

(continued…)

Accordingly, the Superior Court did not err in denying Ms. Blount's motion for a determination that the property was dually owned by Squire Padgett and Eleanor Padgett. *Cf. Clark*, 644 A.2d at 453 (conveyance by husband to wife of his interest extinguished his interest in the tenancy-by-the-entirety property); *In re Barkats*, 2020 Bankr. LEXIS 940, at *44-46 (divorce decree incorporating property settlement agreement governed what interest ex-husband had in property and whether there was any interest for his creditors to attach).

Ms. Blount emphasizes that appellees "voluntarily changed the tenancy by entirety during the collections case" in response to her Notice of Lis Pendens and failed to notify the collections court about the Padgetts' property settlement agreement and divorce until Ms. Blount learned of and disclosed the same.[10] She further asserts that appellees "maneuvered" and "deliberately conspired to commit a fraud by removing the asset out of S. Padgett's name and therefore out of the

---

(…continued)
Eleanor Padgett, who represented to the court (without dispute) that she had lived there without Squire Padgett for over twenty years, paid the mortgage and taxes and paid for all the maintenance and upkeep during that period, all without contributions from Squire Padgett.

[10] We note that the Superior Court judge was very troubled by these omissions, but found it "unclear what remedy is being sought by the plaintiff for this claim" and reasoned, in his order denying the Rule 59(e) motion, that Ms. Blount had failed to state a claim.

reach of Blount as the judgment creditor." Challenging the dismissal of her 2019 complaint, Ms. Blount further argues that the claims in her complaint "are sufficiently different and unrelated to the issue of the determination of dual ownership" that they were not mooted or barred by the ruling on the dual ownership motion.

Mootness may not have been the most precise shorthand for the Superior Court's reasoning in dismissing the 2019 case (reasoning the court set out in greater detail in its order denying Ms. Blount's Rule 59(e) motion), but the dismissal was not in error. There is no dispute that, prior to the conveyance required by the divorce decree and for many years before Ms. Blount obtained her judgment, the Kalmia Road property was tenancy-by-the-entireties property. Thus, by definition, and as the Superior Court found in denying the Rule 59(e) motion, the Kalmia Road property was not an "asset" of the debtor Squire Padgett that could be the subject of a "transfer" that was fraudulent within the meaning of the DC UFTA. *See* § 28-3101(2)(C) and (12) and § 3104(a)(1).[11] Further, as the case law discussed in section II above establishes, as a matter of law Squire Padgett's

---

[11] *Cf. Estes v. Titus*, 751 N.W.2d 493, 498 (Mich. 2008) ("[I]t is difficult to comprehend how disposing of property that a creditor cannot reach [such as property held as tenants by the entirety] could 'defraud' that creditor.").

conveyance of his interest in the Kalmia Road property to Eleanor Padgett did not hinder or delay Ms. Blount's rights as a creditor for purposes of the DC UFTA, because Ms. Blount at no time had a right to attach the Kalmia Road property. *See Aronstein*, 10 F.2d at 992 (holding that where real property was conveyed to Aronstein and his wife as tenants by the entireties, Aronstein subsequently became indebted to appellant creditors, and Aronstein thereafter conveyed to his wife his interest in the real estate, the creditors "were not entitled to subject the separate interest of Aronstein to the payment of their claims" and that "[h]is conveyance to his wife . . . could not hinder or delay them in the collection of their judgments"); *accord District-Realty Title Ins. Corp. v. Forman*, 518 A.2d 1004, 1009 (D.C. 1986) (reasoning that creditor "could not have detrimentally relied on [tenancy-by-the-entireties] assets when it extended credit to Mr. Forman since it already knew that they were no longer available to him" and "therefore cannot now claim that it was hindered or defrauded by their transfer to Sallie Forman"); *see also Jensen v. Anderson (In re Anderson)*, 561 B.R. 230, 243 (Bankr. M.D. Fla. 2016) (holding that a transfer of District of Columbia tenancy-by-the-entireties property held by a debtor and his wife to a trust in the wife's name was not subject to avoidance as a fraudulent transfer); *Estes*, 751 N.W.2d at 498 (explaining that under the Michigan

UFTA, property held by spouses as tenants by the entirety is not an asset, and "its distribution pursuant to the divorce judgment is not a transfer").[12]

In short, the 2019 complaint failed to state a claim for fraudulent transfer under the DC UFTA. There being no fraudulent transfer, we also discern no error in the Superior Court's reasoning that the complaint failed to make out the elements of civil conspiracy, which include, inter alia, an agreement "to participate in an unlawful act, or in a lawful act in an unlawful manner." *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000).[13]

---

[12] We note that a different rule might apply under the fraudulent transfer provisions of the federal Bankruptcy Code. *See In re Hope*, 231 B.R. at 415-16 (explaining that an avoidable, "fraudulent conveyance [under 11 U.S.C. 548(a)] may exist if the debtor agreed to the nondebtor spouse's receiving more than any rational application of the factors [listed in § 16-910] would have yielded had the matter been litigated"); *id.* at 420 ("A property settlement approved by a divorce decree can be avoided as fraudulent under 11 U.S.C. §§ 548(a)(1) or (2)[.]"). But those provisions are inapposite in this case.

[13] Nor did the complaint state a general claim for fraud (by concealment of information from the court), because it fails to allege the elements of fraud: (1) a false representation, (2) with reference to a material fact, (3) made with knowledge of its falsity, (4) made with the intent to deceive and (5) action taken in reliance on the representation. *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1073 n.22 (D.C. 2008). Again, Ms. Blount argues that the concealment was appellees' failure to tell the collections court (until forced to do so by Ms. Blount's disclosure) that the Padgetts were divorced and no longer held the Kalmia Road property as tenants by the entireties and failure to tell the divorce court about Ms. Blount's recorded judgment against Squire Padgett and her notice of lis pendens regarding the Kalmia Road property. Given that it is District of

(continued…)

For the foregoing reasons, the judgment of the Superior Court is

*Affirmed.*

_____

(…continued)
Columbia law pertaining to tenancies by the entireties and the distribution of marital property that govern and that have foreclosed Ms. Blount's efforts to attach a lien to the Kalmia Road property, we cannot discern any injury to Ms. Blount from appellees' having not been forthcoming at the outset about the foregoing circumstances (even assuming that their actions entailed false representations regarding a material fact with intent to deceive).