**1ST ATLANTIC GUARANTY CORPORATION et al.,**
Appellants,

v.

**George E. TILLERSON and Crystal D. Lane–Tillerson, Appellees.**

No. 04–CV–932.

District of Columbia Court of Appeals.

Argued June 21, 2005.

Decided Jan. 25, 2007.

Richard E. Hagerty, McLean, VA, with whom Sheila G. deLa-Cruz was on the brief, for appellants.

James H. Davidson for appellees.

Before REID and GLICKMAN, Associate Judges, and STEADMAN, Senior Judge.

GLICKMAN, Associate Judge:

In this appeal we consider the *lis pendens* effect of a wrongful foreclosure action on certain security interests in the subject property that were created and recorded following the foreclosure sale, while the action was pending. The trial court concluded that the security interests were extinguished by an interim ruling in the action on a motion for partial summary judgment declaring the foreclosure sale void. We disagree. Despite the interim ruling, the final judgment in the wrongful foreclosure action, based on a stipulation

by the parties, was an unsecured award of monetary damages that preserved the purchaser's title to the property. The security interests therefore were not extinguished by the litigation, and they have priority over the judgment lien based on the unsecured monetary award.

## I.

The dispute in this case is over a parcel of improved real property located at 3001 Georgia Avenue, N.W., in the District of Columbia. Appellees George E. Tillerson III and Crystal D. Lane–Tillerson acquired title to the Georgia Avenue property in 1996, subject to a first deed of trust for the benefit of Rufus Stancil. When the Tillersons defaulted on the note held by Stancil in March 1998, he initiated non-judicial foreclosure proceedings.

On August 10, 1998, George Tillerson filed suit against Stancil in Superior Court, seeking to enjoin the allegedly wrongful foreclosure sale that was scheduled to occur two days later. The trial court denied a temporary restraining order, however, and on August 12, 1998, Stancil conducted the sale, buying the Georgia Avenue property for his own account. Stancil acquired record title to the property pursuant to a trustee's deed that he recorded with the Register of Deeds on September 15, 1998. Tillerson then moved for a preliminary injunction to prevent Stancil from taking any further action with respect to the property, which the court denied. Tillerson thereafter amended his wrongful foreclosure complaint, among other things to allege fraud and to seek monetary damages in addition to return of the property.

On June 6, 2000, the trial court, per Judge Rafael Diaz, entered an order granting partial summary judgment in favor of Tillerson and declaring the foreclosure sale to be void. During the jury trial that commenced two weeks later, before Judge A. Franklin Burgess, Jr., the parties entered into a stipulation providing that if Tillerson prevailed on his claims, his remedy would be limited to monetary damages, and that Stancil would retain title to the Georgia Avenue property. Stancil made no representations to Tillerson or the court in connection with the stipulation as to the existence or status of any liens on the property.

On June 26, 2000, the jury awarded Tillerson a total of $727,315 in compensatory and punitive damages. The court entered judgment in accordance with the jury's verdict. On September 13, 2000, the court amended the judgment based on the parties' stipulation to award title to the Georgia Avenue property to Stancil.

Stancil did not appeal, but he also did not pay the judgment against him. On October 19, 2000, Tillerson obtained a writ of *fieri facias* to force the sale of the Georgia Avenue property in satisfaction of his judgment. After appropriate notices, the United States Marshal sold the property in execution to Tillerson on December 21, 2000, for $150,000, subject to all liens of record.

There were such liens. While the wrongful foreclosure action was pending, but before the trial court entered partial summary judgment declaring Stancil's title void in June 2000, Stancil twice encumbered the Georgia Avenue property. First, on January 14, 2000, Stancil and his wife borrowed $60,000 from appellant 1st Atlantic Guarantee Corporation. Although 1st Atlantic was on actual notice of Tillerson's pending wrongful foreclosure action against Rufus Stancil, the loan was secured by a first deed of trust on the Georgia Avenue property. The deed was recorded on February 7, 2000. A few weeks later, on February 29, 2000, 1st Atlantic extended a line of credit to the Stancils in

the amount of $435,000. The deed of trust securing this second loan also encumbered the Georgia Avenue property (as well as other property owned by the Stancils). This second deed was recorded on April 13, 2000. By March 30, 2000, however, the Stancils were in default on their debt.[1]

Tillerson learned of the existence of the 1st Atlantic liens encumbering the Georgia Avenue property around the time he obtained the writ of *fieri facias* to levy on the property and satisfy the monetary judgment in his wrongful foreclosure action. Seeking to set aside the liens, the Tillersons filed the present action against appellants (1st Atlantic, its affiliate Atlantic Funding, and the trustees of the two encumbering deeds) and the Stancils.[2] Although they initially pressed a claim of fraudulent conveyance,[3] the Tillersons eventually relied on the doctrine of *lis pendens*. The dispute over the applicability of that doctrine was presented to the trial court by cross motions for summary judgment on a joint stipulation of facts.

The Tillersons contended in their motion that, since 1st Atlantic had knowledge of the wrongful foreclosure action when it lent funds to the Stancils, its liens on the Georgia Avenue property were invalidated by Judge Diaz's June 6, 2000, partial summary judgment order declaring void the foreclosure sale at which Stancil acquired that property. The Tillersons further contended that the final judgment entered by Judge Burgess, which awarded the Georgia Avenue property to Stancil, did not revive 1st Atlantic's security interests, be-

cause it did not alter Judge Diaz's interim finding that the foreclosure sale was invalid. In opposition to the Tillersons' motion, and in their own cross motion for summary judgment, appellants argued that *lis pendens* was inapplicable because Tillerson did not file a notice of his wrongful foreclosure action against Stancil with the Recorder of Deeds, as required by a statute that took effect on June 24, 2000, when the action still was pending. *See* D.C.Code § 42–1207 (2001). Alternatively, appellants argued that Tillerson had abandoned his claim to the Georgia Avenue property during the wrongful foreclosure suit when he elected a monetary remedy and stipulated that Stancil would retain title to the property. Thus, appellants contended, the Tillersons' interest in the property, which was based on their judgment lien and the subsequent post-judgment judicial sale of the property, was subordinate to the 1st Atlantic liens that had been perfected prior to the end of the wrongful foreclosure action.

The trial court granted summary judgment to the Tillersons. Because 1st Atlantic had received actual notice of the wrongful foreclosure action, the court concluded, *lis pendens* principles applied irrespective of whether there had been compliance with D.C.Code § 42–1207. Further, the court ruled, Tillerson's election to accept an unsecured money judgment and forego the return of the Georgia Avenue property "did not destroy the *lis pendens* effect" of the wrongful foreclosure action, because Stancil's subsequent default entitled Tiller-

---

1. 1st Atlantic subsequently assigned the Stancils' notes to its affiliate, appellant Atlantic Capital Funding Corporation ("Atlantic Funding").

2. In the midst of the trial court proceedings, Rufus Stancil filed for bankruptcy, and the Stancils are not parties to this appeal.

3. The complaint alleged a fraudulent conveyance of the Georgia Avenue property from Rufus Stancil to his wife. The trial court awarded summary judgment to the defendants on that claim, finding it undisputed that no transfer at all had occurred between Mr. and Mrs. Stancil, fraudulent or otherwise. The Tillersons have not appealed that determination.

son to attach the property and compel its sale to satisfy the judgment. Finally, given the applicability of *lis pendens,* the court held that 1st Atlantic's security interests in the Georgia Avenue property were "extinguished" by Judge Diaz's interim ruling on partial summary judgment:

> [B]ecause the foreclosure sale was deemed void by Judge Diaz, Stancil's ownership interest acquired through the wrongful foreclosure sale, and any subsequent transactions involving Stancil's ownership interest, were immediately extinguished. As a result, ... 1st Atlantic's priority interest in the Property was also extinguished.

Although the final judgment in the wrongful foreclosure action "permitted Stancil to retain title" to the property, it did so, the court stated, on "a completely different and separate legal basis from the foreclosure sale," namely, on the basis of Tillerson's stipulated election of a monetary remedy in lieu of the property. Therefore, the court concluded, the final judgment "did not ... change the fact that 1st Atlantic's interest in the Property was extinguished when the Court declared the foreclosure sale void."

## II.

■ Appellants ask us to reverse the trial court and remand the case for entry of judgment in their favor.[4] The court erred at the outset, appellants contend, by failing to enforce D.C.Code § 42–1207. Because Tillerson did not file a notice of

*lis pendens* as required by § 42–1207, appellants assert, the wrongful foreclosure action was not *lis pendens,* and 1st Atlantic acquired its security interests in the Georgia Avenue property free and clear of Tillerson's claims. Moreover, appellants contend, the trial court misapplied the doctrine of *lis pendens* by disregarding Tillerson's stipulation and treating Judge Diaz's interim ruling as though it were a final judgment. Appellants argue that because the final judgment in the wrongful foreclosure action preserved Stancil's title to the Georgia Avenue property, 1st Atlantic's liens were not extinguished and were entitled to priority.

■ Like many jurisdictions, the District of Columbia recognizes the common law doctrine of *lis pendens,* which has the legal effect of providing constructive notice of pending litigation involving real property interests. *First Md. Fin. Servs. Corp. v. District–Realty Title Ins. Corp.,* 548 A.2d 787, 791 (D.C.1988) (citing *Anderson v. Reid,* 14 App. D.C. 54, 68 (1899)). "Under *lis pendens,* nothing relating to the subject matter of the suit could be changed while it was pending and one acquiring an interest in the property involved therein from a party thereto took such interest subject to the parties' rights as finally determined, and was conclusively bound by the results of the litigation." *Id.* at 791 (internal quotation marks, brackets and citation omitted); *accord Lewis v. Jordan Inv., Inc.,* 725 A.2d 495, 500 (D.C.1999); *District of Columbia Redev. Land Agency*

4. Both the award of final summary judgment to the Tillersons and the reciprocal denial of summary judgment to appellants are before us in this appeal. *See District of Columbia v. Helen Dwight Reid Educ. Found.,* 766 A.2d 28, 32 (D.C.2001). Our review is *de novo;* "we conduct an independent review of the record to determine whether 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Willens v. 2720 Wisconsin Ave. Co-op. Ass'n, Inc.,* 844 A.2d 1126, 1133 (D.C.2004) (quoting Super. Ct. Civ. R. 56(c)). The parties before us having stipulated to the material facts not in dispute, our decision in this case turns on questions of law.

*v. Dowdey,* 618 A.2d 153, 161 n. 14 (D.C. 1992). "The property may still be transferred but the purchaser or encumbrancer (historically named the 'purchaser *pendente lite'*) takes the property subject to the final judgment rendered in the pending litigation." POWELL ON REAL PROPERTY § 82A.01 [1] (Michael Allan Wolf ed.2006, LexisNexis Matthew Bender) (hereinafter, "POWELL") (footnotes omitted). "The resulting judgment and the interest preserved or obtained through the judgment relate back to the *lis pendens* date, and any party whose interest in the property arose during the interim period is subject to the final judgment." *Id.* (footnote omitted). "*Pendente lite* transferees are treated as if they were parties in the litigation. The party through whom they received the property represents the interests of the purchaser obtaining property subject to *lis pendens.*" *Id.* § 82A.06 [1] (footnote omitted).

Most jurisdictions, including the District of Columbia, have enacted statutes requiring a party to record a notice that litigation affecting property is pending in order to obtain the benefits of *lis pendens.* This filing requirement makes it easier for interested third parties to discover the existence and scope of the litigation. *See* POWELL § 82A.01 [3]. Thus, the District's statute states that the pendency of litigation "affecting the title to or asserting a mortgage, lien, security interest, or other interest in real property situated in the District of Columbia, does not constitute notice to, and shall not affect a party not a party thereto, unless a notice of the pendency of the action or proceeding is filed for recordation" with the Recorder of Deeds. D.C.Code § 42–1207(a); *see Trustee 1245 13th Street, N.W. # 608 v. Anderson,* 905 A.2d 181, 184–85 (D.C. 2006). Although this statute did not take effect until June 24, 2000, appellants argue that, as a procedural enactment, it should be applied retroactively to actions pending on that date, including the wrongful foreclosure action. *See generally Montgomery v. District of Columbia,* 598 A.2d 162, 166 (D.C.1991). Appellees respond that in the absence of "a clear legislative showing" to the contrary, § 42–1207 should "be construed as having only a prospective operation," *Wolf v. District of Columbia Rental Accommodations Comm'n,* 414 A.2d 878, 880 n. 8 (D.C.1980), at least so as not to void the substantive effect of *lis pendens* under common law on liens that were created before the statute went into effect.

Appellees also argue (and the trial court agreed) that D.C.Code § 42–1207 does not preclude the application of *lis pendens* in this case because 1st Atlantic had actual knowledge of the pending wrongful foreclosure action when it made the loans to the Stancils. Appellants respond that 1st Atlantic's actual knowledge is immaterial because § 42–1207 is unequivocal; unlike the statutes in other jurisdictions, which provide for the operation of *lis pendens* even absent recordation if the purchaser *pendente lite* had actual knowledge of the pending action, *see* POWELL § 82A.01[3] n. 19, § 42–1207 admits of no such exception.

We need not construe D.C.Code § 42–1207 to decide the present case, however. Even assuming the applicability of *lis pendens,* we agree with appellants that 1st Atlantic's liens on the Georgia Avenue property were not extinguished in the wrongful foreclosure litigation. On the contrary, the outcome of that litigation confirmed both the validity of those liens and their priority. The effect of *lis pendens* is determined by the final judgment in the litigation:

The *lis pendens* doctrine is ultimately tied to the judgment resulting from the litigation. Property is affected only to

the extent of the relief granted in the final decree or judgment. During the pendency of litigation, persons are on notice that the property involved may be subjected to the full extent of the relief being sought. The actual impact of the litigation on property involved, however, may be considerably reduced if the judgment denies part of the prayer of the original pleadings. The effect is limited to the final decision of the court.

POWELL § 82A.04 [2] (footnotes omitted). Under the doctrine of *lis pendens,* therefore, 1st Atlantic took its security interests in the property subject to the interests of Tillerson and Stancil "as finally determined" in the wrongful foreclosure action. *First Md. Fin. Servs.,* 548 A.2d at 791. The final judgment in that action preserved Stancil's interest in the Georgia Avenue property; Tillerson emerged with only an unsecured monetary award. The final judgment therefore preserved 1st Atlantic's security interests, which were derivative of Stancil's interest in the property, as well.

 It is immaterial that Judge Diaz entered an interim order on Tillerson's motion for partial summary judgment declaring Stancil's interest void. "An order granting partial summary judgment as to a single issue in a case is not a final, appealable order." *Cohen v. Owens & Co., Inc.,* 464 A.2d 904, 905 (D.C.1983); *accord District of Columbia v. Eastern Trans–Waste of Md., Inc.,* 758 A.2d 1, 8 (D.C.2000). The order was "subject to revision at any time before the entry of [final] judgment." Super. Ct. Civ. R. 54(b). A revision, in effect, is what occurred, pursuant to Tillerson's stipulation that he would accept an unsecured money judgment and leave Stancil with legal title to the property. Merely because the foreclosure was unlawful did not mean that Stancil's purchase of the property at the foreclosure sale had to

be voided. "The mortgagor [in a wrongful foreclosure suit] must elect his remedy. He cannot sue for damages and at the same time seek to upset the conveyance." POWELL § 37.42[6] (footnote omitted). Tillerson made his election, and appellees are bound by it.

It similarly is immaterial that Tillerson had a judgment lien on Stancil's property, enforceable by means of a writ of *fieri facias,* from the date he filed and recorded his money judgment in the office of the Recorder of Deeds. *See* D.C.Code §§ 15–102(a), 15–311 (2001); *Consumers United Ins. Co. v. Smith,* 644 A.2d 1328, 1352 (D.C.1994). The liens of 1st Atlantic were superior to Tillerson's judgment lien, as they related back to the dates on which they were recorded. *See* D.C.Code § 42–401 (2001); *Eastern Sav. Bank, FSB v. Pappas,* 829 A.2d 953, 956 (D.C.2003) ("Generally, priority of liens or security interests is determined according to the well-known principle of 'first in time, first in right.' ") (quoting *Malakoff v. Washington,* 434 A.2d 432, 434 (D.C.1981)).

The judgment of the Superior Court in favor of appellees is reversed. The case is remanded with directions to enter judgment in favor of appellants.

*So Ordered.*