**FIDELITY NATIONAL TITLE IN-SURANCE COMPANY OF NEW YORK, et al., Appellants,**

v.

**George E. TILLERSON, III, et al., Appellees.**

**No. 08–CV–1220.**

District of Columbia Court of Appeals.

Argued March 24, 2010.
Decided Aug. 19, 2010.

---

Arthur F. Konopka, Washington, DC, with whom Brian W. Thompson was on the brief, for appellants.

James Harnden Davidson, Washington, DC, for appellee.

Before KRAMER, FISHER, and BLACKBURNE–RIGSBY, Associate Judges.

KRAMER, Associate Judge:

This case comes to us after the trial court forced the sale of a piece of real property in satisfaction of a Superior Court judgment won by appellee George Tillerson in 2000. On appeal, we are asked to consider whether a motion to execute a judgment reopens a case so that it once again becomes *lis pendens*.[1] The answer to that question determines the priority of security interests in the real property at issue.

Appellants EMC Mortgage Corporation ("EMC") and Fidelity Title Insurance Corporation ("Fidelity"), creditors with security interests in the real property, argue that the trial court erred in granting appellee George Tillerson's motion for aid in the execution of a writ of *fieri facias*.[2] They contend that this litigation is pending and that Tillerson failed to properly record his interest in the property in accordance with the *lis pendens* recording statute, depriving them of notice of his claim to the property and subordinating his interest in the property to theirs. We conclude that D.C.Code § 15–102(a), and not the *lis pendens* statute, is the applicable recording statute here. Therefore, we agree with the trial court that Tillerson had the superior interest in the property because he properly recorded his lien in accordance with § 15–102(a) before the creditors obtained their interests, and we affirm.

## I. Factual Background

This appeal follows a decade of litigation and a prior appeal.[3] The following facts are not disputed by the parties. On June 27, 2000, George Tillerson won a monetary judgment of $727,315 against Rufus Stancil.[4] Tillerson recorded the judgment in

---

1. *Lis pendens* means "a pending lawsuit." BLACK'S LAW DICTIONARY 950 (8th ed.1999) (*quoted in Trustee 1245 13th Street, NW # 608 v. Edwin Anderson*, 905 A.2d 181, 183 n. 2 (D.C.2006)).

2. A writ of *fieri facias* is a "[a] writ of execution that directs a marshal or sheriff to seize and sell a defendant's property to satisfy a money judgment." BLACK'S LAW DICTIONARY 659 (8th ed.1999).

3. *See First Atlantic Guar. Corp. v. Tillerson*, 916 A.2d 153 (D.C.2007).

4. Tillerson sued Stancil in August 1998 to enjoin an allegedly wrongful foreclosure sale on his property. After the trial court initially denied Tillerson a temporary restraining order, Stancil foreclosed on Tillerson's property and bought the property for himself. Tillerson then amended his complaint to include allegations of fraud against Stancil. Ultimately, in June 2000, Tillerson won a judgment for $727,315 in compensatory and

the name of Rufus Stancil in the general index of the Recorder of Deeds on October 6, 2000. Stancil never appealed the final judgment against him, nor did he pay his debt to Tillerson. Since 2000, Tillerson has been attempting to locate assets to satisfy the judgment against Stancil. These efforts have culminated in the current appeal before us.

In early 2007, Tillerson discovered that Stancil owned a piece of real property located at 421 12th Street, Southeast ("property").[5] On March 27, 2007, Tillerson filed a request for a writ of *fieri facias* to force the sale of the property in satisfaction of his monetary judgment.[6] The trial court issued the writ on April 9, 2007, and the United States Marshal posted the writ on Stancil's property on April 16, 2007. The property, however, was never successfully seized because Stancil con-veyed the property to his wife, Dolores Stancil, the very next day, April 17, 2007. Stancil conveyed the property for no consideration other than "the sum of Zero Dollars and my love and affection...." When the United States Marshal learned of the transfer of ownership, it postponed the sale of the property. The sale of the property has been in limbo ever since.[7]

After Mr. Stancil conveyed the property to Mrs. Stancil, they applied for and received a loan from appellant EMC, using the property as collateral. Mrs. Stancil executed the promissory note insured by Fidelity, but both Mr. and Mrs. Stancil signed the Deed of Trust securing the note.

After three hearings over the course of nearly a year, the trial court held that the conveyance from Mr. Stancil to Mrs. Stancil was fraudulent[8] and that Tillerson's

punitive damages against Stancil. See *First Atlantic Guar., supra* note 3, for a more detailed explication of the facts of this matter. The 2000 judgment that Tillerson won against Stancil is the monetary judgment that he is attempting to satisfy in the current action.

5. The record shows that this property was the subject of a 2006 Chapter 11 bankruptcy proceeding in Stancil's name. On November 28, 2006, the bankruptcy trustee declared this property to be of insufficient value to satisfy the bankruptcy debts and abandoned it.

6. Significantly, the trial court had previously issued a writ of *fieri facias* in connection to another piece of real property owned by Stancil, located at 3001 Georgia Avenue, Northwest. While Tillerson initially received $150,000 from the United States Marshal's seizure and sale of that property, the partial monetary satisfaction of the 2000 judgment was subject to all liens of record. Tillerson sued Stancil and the lien holders, but he eventually lost on appeal, when we held that the lien holders' interests were superior to Tillerson's "as they related back to the dates on which they were recorded." *First Atlantic Guar. Corp., supra* note 3, 916 A.2d at 158 (citing D.C.Code § 42–201 (2001)).

7. The original writ of *fieri facias* expired in June 2007, but Tillerson renewed the writ and filed a motion for aid in execution of the writ on August 1, 2007.

8. EMC and Fidelity contend that the trial judge violated due process by voiding Mr. Stancil's conveyance of the property as fraudulent without a full evidentiary hearing on the issue. While we agree with the trial judge that this conveyance was fraudulent, *see* D.C.Code § 28–3104(a) and *Consumers United Insurance Co. v. Smith*, 644 A.2d 1328, 1358 (D.C.1994) (describing "badges of fraud," i.e., any facts "tending to throw suspicion upon the questioned transaction," including, but not limited to, the value of the consideration given, or lack thereof; a close relationship between the transferor and the transferee; the pendency or threat of litigation; the solvency of the debtor; and retention of possession, control, or benefit of the property by the transferor), and we find no due process violation, we do not address this issue at length because it has no effect on the dispositive question of the priority of interests in the real property.

The fraud did not divest EMC and Fidelity of their security interests in the property because Mr. Stancil retained ownership of the

interest in the property was superior to EMC's and Fidelity's interests, regardless of whether their title was valid or not, because he recorded his judgment lien before the creditors obtained their interest. Thus, the trial judge concluded that the interests of EMC and Fidelity were subordinate to Tillerson's. The court's judgment empowered the U.S. Marshal to seize and sell the real property to satisfy Tillerson's 2000 judgment against Mr. Stancil.

## II. Legal Analysis

EMC and Fidelity contend that Tillerson failed to properly record his judgment lien because the parties are currently engaged in pending litigation, in which the District's *lis pendens* statute, D.C.Code § 42–1207,[9] governs. That statute requires recordation of the specific address of property with the land records department of the Recorder of Deeds, which Tillerson failed to do.[10] Tillerson argues, and the trial judge found, that the *lis pendens* statute, and its attendant requirements, are irrelevant because there is no "pending litigation." Accordingly, the trial

judge concluded that Tillerson did in fact properly record his lien in compliance with the relevant recording statute, the recording statute governing the recording of final judgments. The trial court's construction of the *lis pendens* statute involves questions of law, which we review *de novo*.[11]

"It is axiomatic that a prior lien gives a prior legal right ('first in time, first in right')...."[12] Tillerson recorded his lien in October of 2000, while EMC did not issue its loan related to the property until August 16, 2007. Therefore, if we find that Tillerson's recording of his lien complied with the applicable recording statute, we must conclude that his interest in the property was superior to EMC's and Fidelity's interests in the property because it was "first in time." The trial judge held that D.C.Code § 15–102(a), the recording statute governing the recording of final judgments, controlled because Tillerson's lien arose from the final judgment in the 2000 litigation between Tillerson and Stancil. Critically, § 15–102(a) only requires that a final judgment be recorded with the Recorder of Deeds,[13] which Tillerson indis-

---

property and his name was on the Deed of Trust which EMC and Fidelity insured. Thus, Fidelity and EMC obtained legitimate interests in the property regardless of whether the conveyance was fraudulent.

9. D.C.Code § 42–1207 provides, in relevant part:
   (a) The pendency of an action or proceeding in either state or federal court in the District of Columbia, or in any other state, federal, or territorial court, affecting the title to or asserting a mortgage, lien, security interest, or other interest in real property situated in the District of Columbia, does not constitute notice to, and shall not affect a party not a party thereto, unless a notice of the pendency of the action or proceeding is filed for recordation, as required by subsection (b) of this section.

10. The Recorder of Deeds maintains both a General Index, which maintains records in alphabetical order filed under an individual's

name, and a Land Record Index, which maintains records organized by the address of a property.

11. *See Alcazar Tenants' Ass'n v. Smith Prop. Holdings*, 981 A.2d 1202, 1205 (D.C.2009); *Slater v. Biehl*, 793 A.2d 1268, 1271 (D.C. 2002).

12. *District of Columbia v. Franklin Inv. Co.*, 404 A.2d 536, 540 (D.C.1979).

13. D.C.Code § 15–102(a) provides, in relevant part:
    Each [ ] final judgment or decree for the payment of money rendered in the ... Superior Court of the District of Columbia, from the date such judgment or decree is filed and recorded in the office of the Recorder of Deeds of the District of Columbia ... shall constitute a lien on all the freehold and leasehold estates ... of the defendants bound by such judgment ... in any land....

putably did.[14]

EMC and Fidelity challenge the trial judge's conclusion that § 15–102(a) controls. They contend that litigation is pending in this case and that D.C.Code § 42–1207 (the *lis pendens* statute) controls instead. They base their contention on the fact that Tillerson filed a motion in aid of execution of his writ on this property, which they allege has reopened the case so that the litigation once again became "pending." If § 42–1207 were to govern, they argue that Tillerson's recording of his lien would be deficient because he did not include a "[d]escription of the real property sought to be affected" as required by § 42–1207(b)(8). EMC and Fidelity assert that they were not properly notified of Tillerson's claim to the property because of Tillerson's failure to include the address of the property in his recorded lien. Moreover, they contend that Tillerson's failure to record his lien in accordance with § 42–1207 rendered his lien subordinate to their interests.

We agree with the trial judge that § 42–1207 is irrelevant here. The passage of § 42–1207 in 2000, titled the "Fairness in Real Estate Transactions and Retirement Funds Protection Amendment Act of 2000," was undoubtedly of great import in that it "require[d] that notice of litigation concerning real estate be filed with the Recorder of Deeds, thus providing persons with notice of litigation that could affect good title to real estate."[15] Nonetheless, as the legislative history makes clear, the relevance of § 42–1207 is limited to pending litigation.[16] When litigation has concluded and a final judgment has been rendered, as here, § 15–102 controls. We disagree that Tillerson's motion in aid of execution of his writ on this property reopened the case, so that the litigation once again became "pending." "Actions to recover a debt," like Tillerson's action in this case, "do not give rise to *lis pendens* because no specific property is designated for relief in the judgment. No *lis pendens* is involved merely because a money judgment gives the prevailing party a judgment lien in real property owned by the defeated party."[17]

The monetary judgment which Tillerson received in 2000 was a final judgment which Mr. Stancil did not appeal. That case thus ended and Tillerson properly recorded his judgment lien pursuant to

---

The statute further states that any liens created under this statute shall continue as long as the judgment is in force or until it is satisfied or discharged. *Id.*

14. Even appellants' counsel conceded, both in the trial court and at oral argument, that a title search should include a search of these general records, regardless of which recording statute governs. At the final hearing on this case in Superior Court, the judge asked appellants' counsel, "Isn't that what due diligence is for? I mean, you are making a loan to two people. Why, how could it possibly be appropriate diligence to fail to search the records of the recorder of deeds for a judgment lien against one of those people." Appellants' counsel admitted that "the standard of care for searching would include a search of such records," however, he maintained

that § 42–1207 meant that "a search of such records" was not absolutely required.

15. D.C. Council, Report on Bill 13–267 at 1–2 (Dec. 10, 1999) (legislative history of § 42–1207).

16. "The District of Columbia currently has no lis pendens statute. As a result, the common law doctrine of lis pendens applies. Under this doctrine, subsequent purchasers of property are considered to be on constructive notice of matters contained in pending litigation concerning real property." D.C. Council, Report on Bill 13–267 at 3 (Dec. 10, 1999) (legislative history of § 42–1207).

17. 14 RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 82A.02 [4][4c] (Michael Allen Wolf ed., LexisNexis Mathew Bender 2009).

§ 15–102, the D.C. recording statute that governs final judgments. The motion in question here is simply an attempt to execute that final judgment, not to re-open the litigation. The trial judge's comments on this point are instructive:

> This is a closed case. The only proceeding before me is the motion for aid in execution of writ of *fieri facias*. In other words, this is not an active litigation. The only matter that's being litigated is whether or not I should void a transfer and permit plaintiff, or rather order the marshals to sell this property.

EMC and Fidelity were thus on notice of Tillerson's claim to the property and their interests in the property were subordinate to Tillerson's.

### III. Conclusion

We conclude that Fidelity's and EMC's interests in the real property were subordinate to Tillerson's interest because Tillerson properly recorded his interest first. Thus, the decision of the lower court is

*Affirmed.*