**Dennis STEVENSON, Plaintiff,**

v.

**ESTATE OF Lorraine S. MASSEY, et al., Defendants.**

**Civil Action No. 10–317(RMC).**

United States District Court, District of Columbia.

Oct. 26, 2010.

Donald R. Dinan, Roetzel & Andress, Washington, DC, for Plaintiff.

Judith A. Kidwell, U.S. Attorney's Office, Beverly Ann Henderson, Washington, DC, Daniel J. Collins, McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., Greenbelt, MD, for Defendants.

## MEMORANDUM OPINION

ROSEMARY M. COLLYER, District Judge.

The Department of Housing and Urban Development ("HUD") and the United States (collectively, "Federal Defendants") move to dismiss the Estate of Lorraine S. Massey's ("Defendant Estate") third-party claims against them. In light of Federal Defendants' recent release of the second deed of trust and mortgage upon the real property located at 1738 Potomac Avenue, S.E. in the District of Columbia ("Property"), the motion to dismiss will be granted. Additionally, because Federal Defendants were the sole reason to adjudicate this action in federal court, the Court will, in its discretion, decline supplemental jurisdiction and remand the case back to the Superior Court.

## I. FACTS

This case had its beginning in 2002 in the Superior Court for the District of Columbia. Multiple tax liens had been assessed against the Property that was titled in the names of Ruth Fletcher Stevenson and Lorraine Dent a/k/a Lorraine Massey as joint tenants. Ms. Stevenson was Ms. Massey's mother. Ms. Stevenson died in 1976 and Ms. Massey became the sole owner of the Property until her death in 1990.

On October 1, 1996, due to multiple tax liens, the D.C. Department of Finance and Revenue sold the Property to the District of Columbia at a tax sale, subject to a right of redemption. The District of Columbia assigned and sold its lien to a holding

company, TLC Trust, and issued a Tax Lien Certificate. On December 7, 2000, this Tax Lien Certificate was sold to Eastern Europe, LLC.

On August 2, 2002, Eastern Europe filed a foreclosure action to quiet title in the Superior Court. On October 31, 2002, Eastern Europe assigned its tax lien to Plaintiff Dennis Stevenson, and he was substituted as the plaintiff in the quiet title action on February 13, 2003. Mr. Stevenson is a son of Ruth Fletcher Stevenson; his potential relationship to Lorraine Massey is unclear. On March 26, 2004, the Superior Court entered a default judgment in favor of Mr. Stevenson, thus foreclosing the right of redemption on the Property and allowing Mr. Stevenson to receive a deed from the District of Columbia.

Three years after Mr. Stevenson received his deed to the Property, Janis Dent, the daughter of Lorraine Massey, through her guardian, Evangeline Covington, filed a motion to vacate the judgment in favor of Mr. Stevenson. That motion was denied on April 23, 2007. On December 25, 2007, Ms. Dent moved to intervene in the foreclosure action and to re-open the case. She also moved to vacate the default judgment. Those motions were denied by the Superior Court on February 19, 2008.

On February 7, 2008, immediately before the denial of Ms. Dent's motions, Reginald Dent, son of Lorraine Massey and brother to Janis Dent, moved to intervene in the foreclosure action. He first demonstrated that Lorraine Massey and Lorraine Dent were one and the same person. He also asserted that he and Janis Dent were the heirs of Ms. Massey but had not received notice of the 2002 foreclosure action. The Superior Court granted Mr. Dent's motion to intervene as the co-personal representative of the Estate of Lorraine Massey on August 5, 2009. At the conclusion of a hearing held on August 18 and 29, 2009, the Superior Court held that neither Mr. Dent nor Ms. Janis Dent had been provided proper notice of the foreclosure suit and that Mr. Stevenson had perpetrated a fraud upon the court in claiming to be the sole heir of Lorraine Massey. On October 15, 2009, the Superior Court vacated the foreclosure judgment in favor of Mr. Stevenson and voided his deed to the Property.

However, prior to that hearing, on March 23, 2009, Mr. Stevenson obtained a "reverse mortgage" from 1st Mariner Bank. Under the Home Equity Conversion Mortgage program run by the Federal Housing Authority, a home owner who is aged 62 or older and who lives in his home with no mortgage or only a small mortgage can borrow against the equity in the house. The homeowner receives money payments according to one of five payment plans. A reverse mortgage does not require repayment as long as the borrower uses the home as his principle residence. A lender recoups its money when the house is sold. *See* About Reverse Mortgages for Seniors (HECM)-HUD, http://www.hud.gov/offices/hsg/sfh/hecm/hecmabou.cfm (last visited Oct. 25, 2010—and attached hereto).

The reverse mortgage granted by 1st Mariner Bank was filed as a Home Equity Conversion First Deed of Trust with the Recorder of Deeds in the District of Columbia on April 29, 2009, as Instrument No. 2009045445. Under the Home Equity Conversion Mortgage program, HUD granted a Home Equity Conversion Second Deed of Trust from which HUD would pay the benefits of the reverse mortgage to Mr. Stevenson if 1st Mariner Bank failed to do so. The second deed of trust also was recorded on April 29, 2009, as Instrument No. 2009045445, although there has been no cause to pay any monies from it. Of particular significance, these

deeds of trust were completed while three *lis pendens* were recorded on the Property for the litigation involving the Defendant Estate's rights to that property.

Despite the Superior Court's vacatur of the foreclosure judgment in favor of Mr. Stevenson, which voided his deed to the Property, Mr. Stevenson still held the tax lien against the Property. He filed an amended complaint in December 2009, seeking to foreclose the right of the Defendant Estate to redemption. Mr. Stevenson named 1st Mariner Bank, which still holds a first deed of trust on the Property, as a party, but did not name Federal Defendants as parties. In response to the Amended Complaint, Defendant Estate filed an Answer, with a counterclaim against Mr. Stevenson, and a crossclaim against 1st Mariner Bank. Defendant Estate also filed crossclaims against various other non-parties, including Federal Defendants.

On February 26, 2010, Federal Defendants removed the case from Superior Court. On March 13, 2010, Defendant Estate filed a motion for leave to file a third-party complaint against the United States, the Department of Housing and Urban Development, and Millennium Title & Abstract Co., Inc. *See* Motion to Bring in Third–Party Defendants [Dkt. # 7]. In this Third–Party Complaint, Defendant Estate sought to quiet title by extinguishing Federal Defendants' second home equity deed of trust on the Property, as well as to allege tort claims against Federal Defendants and Millennium. *See* Third–Party Complaint [Dkt. # 7–1] at 10, 15. Defendant Estate sought no monetary damages against Federal Defendants.

Federal Defendants then filed a motion to dismiss the crossclaims, an opposition to Defendant Estate's motion for leave to file a third-party complaint, and a motion to remand the case back to the Superior Court. The Court denied both Federal Defendants' motions to dismiss the crossclaims and remand the case back to the Superior Court, and granted Defendant Estate's motion for leave to file a third-party complaint. The Court, upon a motion for reconsideration [Dkt. # 17], dismissed the crossclaims as improper, and clarified that the "Third–Party Complaint shall govern any claims against the third-party defendants." Memo. Op. of August 6, 2010 [Dkt. # 29].

## II. LEGAL STANDARDS

### A. Motion to Dismiss Under Fed. R.Civ.P. 12(b)(1)

Federal district courts are courts of limited jurisdiction and "possess only that power conferred by constitution and statute." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Under Federal Rule of Civil Procedure 12(b)(1), the party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C.Cir.2008). When reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C.Cir. 2004). To determine whether it has jurisdiction over the claim, a court may consider materials outside the pleadings. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C.Cir.2005). No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is an Article III and a statutory requirement. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C.Cir. 2003).

## B. Motion to Dismiss Under Fed. R.Civ.P. 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). A complaint must be sufficient "to give a defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The facts alleged "must be enough to raise a right to relief above the speculative level." *Id.* Rule 8(a) requires an actual showing and not just a blanket assertion of a right to relief. *Id.* at 555 n. 3, 127 S.Ct. 1955. "[A] complaint needs *some* information about the circumstances giving rise to the claims." *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n. 4 (D.C.Cir.2008) (emphasis in original). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

## III. ANALYSIS

■ Defendant Estate's Complaint outlines two theories by which the Court has jurisdiction over this action: (1) quieting title to the Property, on which Federal Defendants hold a second deed of trust, brought pursuant to 28 U.S.C. § 2410; and (2) negligent lending due to Federal Defendants' encumbering the Property while three *lis pendens* were already recorded on that Property, brought pursuant to the Federal Tort Claims Acts ("FTCA"), under 28 U.S.C. §§ 2671 *et seq.* The Complaint requests the same remedy for Federal Defendants under both theories, declaratory relief effecting quiet title by releasing the Federal Defendants' claims to the Property. *See* Third Party Compl. [Dkt. # 7–1] at 10, 15. As a result of Federal Defendants' release of the second deed of trust, Defendant Estate has not only satisfied Defendant Estate's requested remedy, but it has rendered its theory under 28 U.S.C. § 2410 moot. Furthermore, a transaction on property subject to a *lis pendens* is not a tort, thus there can be no claim under the FTCA upon which relief can be granted.

Under 28 U.S.C. § 2410, "the United States may be named a party in any civil action or suit in any district court ... to quiet title to ... real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C. § 2410(a)(1). By release of the second deed of trust, the United States no longer has or claims a mortgage or other lien. Therefore, the Federal Defendants' actions in releasing the second deed of trust mooted any action that could be maintained under 28 U.S.C. § 2410.

■ Under the FTCA, "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The nature of Defendant Estate's tort claim against Federal Defendants is that they were negligent in contracting with Plaintiff Stevenson for a reverse mortgage when several *lis pendens* were listed in the recorder's office on that Property. This is not so

much a tort as a gamble for those parties securing mortgages on property already in litigation. As noted in *1st Atl. Guar. Corp. v. Tillerson:*

> The *lis pendens* doctrine is ultimately tied to the judgment resulting from the litigation. Property is affected only to the extent of the relief granted in the final decree or judgment. During the pendency of litigation, persons are on notice that the property involved may be subjected to the full extent of the relief being sought. The actual impact of the litigation on property involved, however, may be considerably reduced if the judgment denies part of the prayer of the original pleadings. The effect is limited to the final decision of the court.

916 A.2d 153, 157–58 (D.C.2007) (citing Powell on real Property § 82A.04 [2] (Michael Allan Wolf ed. 2006)). As a result, "[t]he property may still be transferred but the purchaser or encumbrancer (historically named the "purchaser pendente lite") takes the property subject to the final judgment rendered in the pending litigation." POWELL § 82A.01 [1]. Thus, "any transfer is made with the risk that the transfer may be nullified if the judgment goes against the transferor." *Id.* Should a court finally determine the *lis pendens* issue in favor of Defendant Estate, any transaction subsequent to the *lis pendens,* such as the one contemplated here between Plaintiff Stevenson and Federal Defendants, would be void. It is, therefore, not tortious conduct to transfer property rights after a *lis pendens* is recorded, but rather, risky conduct that is dependent upon the outcome of the litigation underlying the *lis pendens.* The remedy sought is not gained via a tort, but through resolution of the underlying litigation. Because this is not tortious conduct, Defendant Estate has failed to state a claim upon which relief can be granted under the FTCA.

## IV. CONCLUSION

For the reasons stated, Federal Defendants' motion to dismiss [Dkt. # 33] will be **GRANTED.** As a result, no federal action exists in this case, and no federal entities are involved. The Court declines to exercise supplemental jurisdiction, and will order the case **REMANDED** to the Superior Court for the District of Columbia, whence it came. A memorializing Order accompanies this Memorandum Opinion.

ATTACHMENT

**133**

**Homes & Communities**
US Department of Housing and Urban Development

En español | Contact Us | Text only | Search/Index

**Housing**
About Housing
Contact us
Keywords
Single Family
 Audience groups
 Buying a home
 Events & training
 FHA Insured loans
 Common questions
 Housing counseling
 HUD homes/ REO
 Owning a home
 Reference guide
 HEMRA
 Hospitals
 Multifamily
 OAHP
 Reading room
 Online forums
 Work online

**HUD news**

**Homes**

**Resources**

**Communities**

**Working with HUD**

**Tools**
Webcasts
Mailing lists
RSS Feeds
Help

# FHA Reverse Mortgages (HECMs) for Consumers

The Home Equity Conversion Mortgage (HECM) is FHA's reverse mortgage program which enables you to withdraw some of the equity in your home. You choose how you want to withdraw your funds, whether in a fixed monthly amount or a line of credit or a combination of both.

Information by State
Esta página en español
Print version

Go to HECM Home Page.

You can also use a HECM to purchase a primary residence if you are able to use cash on hand to pay the difference between the HECM proceeds and the sales price plus closing costs for the property you are purchasing.

HECM counselors will discuss program eligibility requirements, financial implications and alternatives to obtaining a HECM. They will also discuss provisions for the mortgage becoming due and payable. Upon the completion of HECM counseling, you should be able to make an independent, informed decision of whether this product will meet your needs. You can search online for a HECM counselor.

You can use a reverse mortgage calculator to help you see if you qualify. If you meet the eligibility criteria, you can complete a reverse mortgage application by contacting a FHA-approved lender.

**Borrower Requirements**

You must:

- Be 62 years of age or older
- Own the property outright or have a small mortgage balance
- Occupy the property as your principal residence
- Not be delinquent on any federal debt
- Participate in a consumer information session given by an approved HECM counselor

**Mortgage Amount Based On**

- Age of the youngest borrower
- Current interest rate
- Lesser of appraised value or the HECM FHA mortgage limit or the sales price
- Initial Mortgage Insurance Premium (MIP)--your choices are HECM Standard or HECM SAVER initial MIP

**Financial Requirements**

- No income or employment qualifications are required of the borrower
- No repayment as long as the property is your principal residence and the obligations of the mortgage are met
- Closing costs may be financed in the mortgage

**Property Requirements**

The following eligible property types must meet all FHA property standards and flood requirements:

- Single family home or 1-4 unit home with one unit occupied by the borrower
- HUD-approved condominium
- Manufactured home that meets FHA requirements

134

### How the Program Works

If you are a homeowner age 62 or older and have paid off your mortgage or have only a small mortgage balance remaining, and are currently living in the home, you are eligible to participate in FHA's reverse mortgage program. The program allows you to borrow against the equity in your home. You can select from five payment plans:

- **Tenure** - equal monthly payments as long as at least one borrower lives and continues to occupy the property as a principal residence.
- **Term** - equal monthly payments for a fixed period of months selected.
- **Line of Credit** - unscheduled payments or in installments, at times and in an amount of your choosing until the line of credit is exhausted.
- **Modified Tenure** - combination of line of credit plus scheduled monthly payments for as long as you remain in the home.
- **Modified Term** - combination of line of credit plus monthly payments for a fixed period of months selected by the borrower.

You can change your payment options for a fee of $20.

Unlike ordinary home equity loans, a FHA reverse mortgage HECM does not require repayment as long as the home is your principal residence and the obligations of the mortgage are met. Lenders recover their principal, plus interest, when the home is sold. The remaining value of the home goes to you or your heirs.

If the sales proceeds are insufficient to pay the amount owed, FHA will pay the lender the amount of the shortfall. FHA collects an insurance premium from all borrowers to provide this coverage.

The amount you can borrow depends on:

- Age of the youngest borrower
- Current interest rate
- Lesser of the appraised value of your home, the HECM FHA mortgage limit for your area or the sales price
- The Initial Mortgage Insurance Premium (MIP) option you choose (2% HECM Standard option or .01% HECM Saver option).

You can borrow more with the HECM Standard option. Also, the more valuable your home is, the older you are, and the lower the interest rate, the more you can borrow. If there is more than one borrower, the age of the youngest borrower is used to determine the amount you can borrow. For an estimate of HECM cash benefits, go to HECM Home Page and select an online calculator.

There is no limit on the value of homes qualifying for a HECM. The value of your home will be determined by an appraisal. However, the amount that you may borrow is derived from the lower of the appraised value, sales price or the FHA HECM mortgage limit of $625,500. You are charged an upfront insurance premium of 2 percent of the maximum claim amount for HECM Standard and .01 percent for the HECM Saver. In addition, you will have an annual mortgage insurance premium of 1.25%.

### HECM Costs

You can pay for most of the costs of a HECM by financing them and having them paid from the proceeds of the loan. Financing the costs means that you do not have to pay for them out of your pocket. On the other hand, financing the costs reduces the net loan amount available to you.

The HECM loan includes several fees, including an origination fee, closing costs, mortgage insurance premium, interest and servicing fees.

#### Origination Fee

You will pay an origination fee to compensate the lender for

processing your HECM loan. A lender can charge a HECM origination fee up to $2,500 if your home is valued at less than $125,000. If your home is valued at more than $125,000 lenders can charge 2% of the first $200,000 of your home's value plus 1% of the amount over $200,000. HECM origination fees are capped at $6,000.

### Closing Costs

Closing costs from third parties can include an appraisal, title search and insurance, surveys, inspections, recording fees, mortgage taxes, credit checks and other fees.

### Mortgage Insurance Premium (MIP)

You will incur a cost for FHA HECM insurance. You can finance the mortgage insurance premium (MIP) as part of your loan. You will be charged an initial MIP at closing, which is either 2% (HECM Standard) or .01% (HECM Saver) of the lesser of the appraised value of your home, the FHA HECM mortgage limit for your area or the sales price. Over the life of the loan, you will also be charged an annual MIP that equals 1.25% of the mortgage balance.

The HECM insurance guarantees that you will receive expected loan advances. The insurance also guarantees that, if you or your heirs sell your home to repay the loan, your total debt can never be greater than the value of your home.

### Servicing Fee

Lenders or their agents provide servicing throughout the life of the HECM. Servicing includes sending you account statements, disbursing loan proceeds and making certain that you keep up with loan requirements such as paying taxes and insurance. HECM lenders may charge a monthly servicing fee of no more than $30 if the loan has an annually adjusting interest rate and $35 if the interest rate adjusts monthly. At loan origination, HECM lenders set aside the servicing fee and deduct the fee from your available funds. Each month the monthly servicing fee is added to your loan balance.

### Interest Rate

HECM borrowers can choose an adjustable interest rate or a fixed rate. If you choose an adjustable interest rate, you may choose to have the interest rate adjust monthly or annually. Lenders may not adjust annually adjusted HECMs by more than 2 percentage points per year and not by more than 5 total percentage points over the life of the loan. FHA does not require interest rate caps on monthly adjusted HECMs.

### Repaying a HECM

A HECM loan must be repaid in full when you die or sell the home. The loan also becomes due and payable if:

- You do not pay property taxes or hazard insurance or violate other obligations.
- You permanently move to a new principal residence.
- You, or the last borrower, fail to live in the home for 12 months in a row. An example of this situation would be if you (or the last borrower) were to have a 12-month or longer stay in a nursing home.
- You allow the property to deteriorate and do not make necessary repairs.

### HECM Home Page

**136**

**U.S. Department of Housing and Urban Development**
451 7th Street S.W., Washington, DC 70410
Telephone: (202) 708-1112 TTY: (202) 708-1455
Find the address of a HUD office near you

